No. 33,954

JESSIE L. BRALY, and HUGH BRALY and JEAN BRALY, Minors, by JESSIE L. BRALY, Parent and Next Friend, *Appellees*, v. P. H. McKENNA, *Appellant.*

(83 P. 2d 631)

Opinion filed November 5, 1938.

*W. D. Jochems, J. Wirth Sargent, Emmet A. Blaes, Roetzel Jochems* and *W. G. Muir,* all of Wichita, for the appellant.

*Clark A. Wallace* and *Paul R. Wunsch,* both of Kingman, for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This was an action to quiet title to a residence property in the city of Kingman. Plaintiffs prevailed, and the defendant has appealed.

The action was instituted by Jessie L. Braly, on her own behalf, and on behalf of Hugh Braly and Jean Braly, her minor children. The material facts are sufficiently covered by special findings made by the trial court, and are as follows:

"1. That the Farmers Grain and Mercantile Company was a corporation duly organized and existing under and by virtue of the laws of the state of Kansas, doing a general grain and mercantile business in the city of Kingman, Kan. That P. H. McKenna was the president of said corporation and a stockholder therein. That J. T. Braly was the managing officer of said corporation and the owner of approximately fifty percent of the capital stock.

"2. That the said J. T. Braly died, intestate, a resident of Kingman county, Kansas, on the 27th day of February, 1932, leaving the plaintiffs as his sole and only heirs at law and seized and possessed of the following-described lands and tenements in Kingman county, Kansas, to wit: The east half of lot 16 and all of lots 18 and 20, on Avenue F in North Addition to the city of Kingman, Kan. That said property was acquired by the said J. T. Braly prior to 1927 and was at all times thereafter occupied as a homestead until his death and has since continued to be occupied and claimed as a homestead by the plaintiffs. That about May 11, 1927, said property was mortgaged to the Kingman Building, Savings and Loan Association in the amount of $2,500. That said loan was paid out in monthly installments of approximately $40 per month and that at the time of the death of the said J. T. Braly there was approximately $1,100 due and unpaid upon said mortgage, which was later fully paid off by his widow, Jessie L. Braly. That in August, 1931, said property was reasonably worth $3,000.

"3. That on January 3, 1931, the said J. T. Braly and his wife, Jessie L. Braly, one of the plaintiff's herein, executed the warranty deed, a copy of which is attached to defendant's answer as exhibit 'A,' and said deed was by the said J. T. Braly deposited on said date with John McKenna as escrow party under written instructions, as fully set forth in exhibit 'B' attached to the answer of said defendant. That the $2,500 loan of the State Bank of Kingman mentioned in exhibit 'B' was fully paid off by the Farmers Grain and Mercantile Company on June 30, 1931, and from June 30, 1931, until August 14, 1931, neither the said Farmers Grain and Mercantile Company nor the said J. T. Braly was in anywise indebted to the State Bank of Kingman. That said deed, exhibit 'A,' was not taken up after June 30, 1931, and the same continued to be held by John McKenna as escrow party. That on August 14, 1931, the Farmers Grain and Mercantile Company borrowed the sum of $750 from the State Bank of Kingman, giving its promissory note therefor, which said note was endorsed by the defendant, P. H. McKenna.

"4. That at the time said deed was brought to the office of John McKenna,

Mrs. Braly did not accompany her husband to said office and was not present when said deed was placed in escrow with John McKenna.

"5. That on or about the ——— day of July, 1931, the said J. T. Braly advised the said John McKenna that he had paid the said $2,500 note and asked if he was not entitled to the return of said deed; the said John McKenna, stating that he supposed he was if he had paid the note, and asked said J. T. Braly if he had the canceled note with him; the said J. T. Braly then stated that he did not have the note with him and further stated to said John McKenna, that it did not make any difference anyhow, to just keep the deed as he would likely need to use it again sometime soon.

"6. That thereafter and on or about the 14th day of August, 1931, the said defendant, P. H. McKenna, again endorsed as surety a certain note in the amount of $750 to the State Bank of Kingman for the said Farmers Grain and Mercantile Company, at the request of said J. T. Braly, and said J. T. Braly then orally informed said John McKenna that he should hold said deed in escrow, and that he should deliver said deed to said P. H. McKenna in the event he was obliged to pay the said $750 note or any part thereof.

"7. That the original note, dated August 14, 1931, was renewed by a certain note given to the State Bank of Kingman in the principal sum of $750, dated February 15, 1932, executed by the Farmers Grain and Mercantile Company by J. T. Braly, manager, and endorsed by P. H. McKenna. Said note was introduced in evidence as defendant's exhibit No. 2.

"8. That on April 14, 1932, the State Bank of Kingman demanded payment of said note from the said P. H. McKenna, and the said P. H. McKenna thereupon gave his personal note to said bank in the sum of $760. That the liability ledger of the Farmers Grain and Mercantile Company in said bank was thereupon credited with the amount due on said note and said bank thereafter carried said indebtedness upon a separate sheet as the liability of the said P. H. McKenna.

"9. That shortly after the death of the said J. T. Braly, the Farmers Grain and Mercantile Company became bankrupt and the said P. H. McKenna requested the State Bank of Kingman to file a claim upon said $750 note so executed by the Farmers Grain and Mercantile Company on February 15, 1932, and endorsed by the said P. H. McKenna, as a claim against said bankrupt estate. That the State Bank of Kingman thereupon filed such claim in bankruptcy, and in November, 1936, received the sum of $53.38 as a dividend thereon, which said sum said bank paid the said P. H. McKenna or gave him credit upon his note.

"10. That sometime thereafter the said P. H. McKenna advised the said John McKenna that he had paid said indebtedness to the State Bank of Kingman and demanded that the warranty deed, exhibit 'A,' be delivered over to him. That the said John McKenna thereupon delivered said deed to the said P. H. McKenna, who thereupon placed said deed of record in the office of the register of deeds of Kingman county, Kansas, and procured quitclaim deed from Anthony Gerber and wife and S. F. Reynolds and wife, the other grantees in said deed, exhibit 'A,' and duly recorded said quitclaim deed.

"11. That the said plaintiff, Jessie L. Braly, prior to the death of the said J. T. Braly, had no notice, knowledge or information whatever con-

cerning the note of August 14, 1931, or any renewals thereof, so endorsed by the said P. H. McKenna, and had no notice, knowledge or information that said deed had in anywise been escrowed or hypothecated as security for said $750 note, and that the first information she had concerning said matters was from John McKenna about January, 1933.

"12. That the said plaintiffs herein have never repaid the said sum of $1,030.96 which the said P. H. McKenna was obliged to pay upon the said note, defendant's exhibit No. 2, to the State Bank of Kingman, to said P. H. McKenna, or any part thereof, and have never tendered or offered to pay said amount or any part thereof to him."

The written instructions to the escrow holder which were delivered by plaintiff's husband, together with the deed, were:

"KINGMAN, KANSAS, January 3, 1931.
"*Mr. John McKenna, Kingman, Kansas:*

"DEAR SIR,—You are hereby instructed as follows:

"Whereas the undersigned J. T. Braly and the Farmers Grain and Mercantile Company, a corporation, have procured Anthony Gerber, S. F. Reynolds and P. H. McKenna, to guarantee the payment of a loan of $2,500 to the State Bank of Kingman, Kansas, for said J. T. Braly and The Farmers Grain and Mercantile Company, a corporation;

"And whereas, said J. T. Braly and said Farmers Grain and Mercantile Company, have this day executed two deeds, the one executed by said J. T. Braly and wife, conveying the east half of lot 16 and all of lots 18 and 20 on Avenue F in North Addition to the city of Kingman, Kan.;

"And the other, executed by said Farmers Grain and Mercantile Company, a corporation, conveying to said Anthony Gerber, S. F. Reynolds and P. H. McKenna, the certain part of lot 5 in the town of Cleveland, and the elevator, coal bins and equipment of its certain elevator at Cleveland, Kan., which last property is more particularly described as tract 3 and tract 4 in the deed to said corporation, recorded in book 106, page 616 of the records in the office of the register of deeds of Kingman county, Kansas.

"You are therefore hereby instructed to deliver both said above-described deeds to said Anthony Gerber, S. F. Reynolds and P. H. McKenna, immediately, as soon as you are notified and assured that said parties have been obliged to pay said sum of $2,500 or any part thereof.

"You are hereby further instructed that if said J. T. Braly and said corporation shall pay said sum of $2,500 and said other parties are released therefrom, to return the two deeds to said Braly and said corporation.

"(Signed)    FARMERS GR. & MERCL. CO.,
By  (Signed)    P. H. McKENNA, P'T.
(Signed)    J. T. BRALY."

Appellant moved to have certain requested findings substituted for findings numbers eight and nine. An examination of the record leads us to conclude no reversible error was committed in overruling the motion.

Appellant also urges his demurrer to plaintiffs' evidence should have been sustained. Couching the contention in his own language, it is:

"The plaintiff, having executed the deed and permitted it to be used by her husband without retaining any control over it herself, is estopped to deny his authority to use it as security for a loan."

With this unqualified statement this court does not concur, nor do we regard it as entirely applicable to the material facts in the instant case. In support of appellant's contention two decisions are cited, *Moody v. Stubbs,* 94 Kan. 250, 146 Pac. 346, and *Elliott v. Faulkner,* 131 Kan. 528, 292 Pac. 918. They are not controlling in the instant case for obvious reasons. What debt did this court say the deed in the Moody case secured? Why, the particular debt for which the wife permitted her husband to pledge her deed as security, and not some other debt which her husband might incur long after the former debt had been fully discharged. In that case the identical obligation for which the deed was pledged as security remained unpaid. Only the form of its acknowledgment, or the form of the promise to pay, was changed. It took the form of a renewal note, but the identical principal obligation remained. It was the obligation which the deed was intended to secure, and not the note which merely represented the obligation. Clearly, under such circumstances, it was proper to hold the deed as security until the obvious intention of the parties was fulfilled. That was the basis for the decision in the Moody case. Moreover, in the instant case, there was no delivery of a deed by the husband, as the agent for the wife, to the defendant, or to anyone of the other grantees named therein. It was delivered by the husband to the escrow agent with definite instructions to which defendant is conceded to have agreed. Under these circumstances what was the presumption as to the husband's authority? If any presumption is to be indulged from circumstances, it is the presumption the deed was delivered to the husband in conformity with the specific terms of the escrow agreement. The delivery of the deed and the escrow agreement together, to the escrow agent, constituted a single transaction, and that fact is entitled to consideration in determining the presumed authority of the husband. The testimony of John McKenna, the escrow holder, and a lawyer and brother of the defendant, was very frank. It was: "Mr. Braly brought the deed to me with those written instructions." According to those instructions the deed spent its force,

so far as the defendant, McKenna, was concerned, when the obligation which it was intended to secure was paid. How, then, can the defendant reasonably contend the wife intended her husband should be authorized to pledge the deed for another obligation of the defendant which was created long after the escrow agreement had also spent its force, except as to the requirement that it be performed in accordance with its terms? It seems to us the fact the escrow agreement definitely directed what should be done with the deed upon payment of the specific debt it was pledged to secure, was some affirmative indication the husband was not authorized to use the deed as security for a different debt. The use of the deed by the husband as security for some other personal obligation of the defendant was not included in the escrow instructions. In this connection we might also consider the effect on title to land acquired by the delivery of a deed in contravention of the directions contained in the escrow agreement, but we do not deem that necessary.

What about the Elliott case, stressed by appellant. The pertinent portion of the syllabus in that case reads:

"Where the trial court makes a finding of fact *supported by sufficient evidence,* that at the time of delivery of a deed to real estate the grantors of the deed agreed with the grantee therein that the deed was given to enable the grantee to qualify and become surety on a recognizance bond of the husband, *and such other bonds as the grantee might be asked* by the husband and wife, *or either of them,* to execute as surety for them, *or either of them,* and the title to the property described in the deed should be held by the grantee as security and indemnity against any loss or liability which the grantee might incur or sustain by reason of the execution *of any of the bonds referred to,* it is held: (a) Such deed was properly decreed to be a morgtage to indemnify the grantee against loss on a supersedeas bond signed as surety for the wife who joined in the execution of the deed. . . ." (Syl.) (Italics inserted.)

The italicized portions of the syllabus and the corresponding portions of the opinion at page 530 clearly indicate the distinction between that case and the instant case, and further comment thereon is superfluous.

In *Kinne v. Waggoner,* 108 Kan. 814, 197 Pac. 195, it was held:

"The authority of a husband to act for his wife may be shown by circumstances; and the wife's testimony that she had never given her husband such authority is merely evidence to the contrary which the trial court may or may not believe." (Syl. ¶ 2.)

In the instant case the testimony of the wife was to the effect she had no knowledge of the second transaction until long after her

husband had consummated it. This fact, together with the original delivery of the deed to the escrow agent, and the terms of the escrow agreement, was clearly sufficient to establish prima facie proof of the fact the husband had no authority to pledge the deed for defendant's subsequent debt. For a helpful discussion of the question of what constitutes prima facie proof of a husband's apparent authority to convert his wife's property to his own use, see *Reynolds v. Bank,* 104 Kan. 215, 178 Pac. 605. In *Eadus v. Hunter,* 249 Mich. 190, 228 N. W. 782, it was said:

"Agency and authority of husband and wife when delivering instrument affecting property held by the entireties may be implied from circumstances." (Headnote 3.)

"While husband's agency and authority for wife may be implied from circumstances, husband's authority is no more extensive in scope or longer in duration than that of any agent similarly constituted." (Headnote 7.)

"Where husband, after execution of oil and gas lease on property held by the entireties, delivered lease in escrow under agreement with lessees for himself and for wife under implied authority arising from his possession of lease without instructions from wife, original authority to make escrow agreement held not to authorize husband to withdraw lease from escrow without wife's acquiescence, since husband, by executing escrow agreement, exhausted original authority, and could do nothing further without further authority conferred by wife." (Headnote 8.)

In *Hall v. First Nat. Bank,* 226 App. Div. (N. Y.) 190, 234 N. Y. S. 432, it was said:

"Permit of hypothecation and power of attorney authorizing plaintiff's husband to pledge stock as collateral security for loans of husband and ratifying all agreements which husband might make with bank regarding use of collateral for any loans 'to ———' constituted assent to no agreement which husband might make regarding use of collateral other than for loans to himself, and could not bind plaintiff to pledge of collateral for loans to sons or corporations controlled by sons, unless bank proved that plaintiff otherwise authorized pledging of collateral for that purpose." (Headnote 6.)

The implied authority of the husband resulting from the delivery of the deed to him by the wife flowed into the escrow agreement and bound her only to the extent of the terms of that agreement. (*Eadus v. Hunter,* supra.) The evidence disclosed no other authorization by the plaintiff, and hence the pledge of the deed as security for the subsequent loan of the defendant was invalid.

Appellant next contends: 'The plaintiff is estopped to deny the husband's authority when she failed to bring any action until long after the husband's death and after the administration of his estate had been completed."

Plaintiff's husband died February 27, 1932. Finding number eleven, the correctness of which is conceded on appeal, is to the effect the plaintiff had no notice, knowledge or information the deed had been pledged by her husband as security for the subsequent $750 debt of the defendant until about January, 1933. The property was at all times prior to the death of plaintiff's husband, and has been occupied and claimed at all times since her husband's death, as the homestead. The defendant did not obtain deeds from the other two grantees in the escrow deed until January 9, 1936. He did not record his deeds until February, 1937. This action was commenced on July 9, 1937, to cancel the deeds and remove the cloud from plaintiff's title. She was in possession of the property and acted promptly to set aside the adverse claim when it was asserted of record. Moreover, there was no material change of circumstances, if any, between the date defendant asserted an adverse title and the commencement of this action. Plaintiff's action cannot be defeated on the theory of laches. On the other hand, the defendant finds himself in the untenable position of contending he had acquired a lien on the homestead by virtue of a completely oral agreement with plaintiff's husband in August of 1931, to the extent of the $750 obligation. He also completely failed to effectively assert that purported interest until the year 1937, when the entire estate of the deceased had been administered and the final order of distribution had been made. The judgment of the trial court was obviously correct for several reasons, which we need not now discuss. However, as to this particular contention of appellant, it is sufficient to state plaintiff's action was not barred by reason of laches.

Appellant finally urges: "In the absence of an offer on the part of the plaintiff to pay the debt for which the deed was escrowed, no equitable relief is available to her."

Neither the plaintiff, nor her husband, owed the bank or the defendant any debt. The debt here involved was the obligation of the defendant. Whether it was primarily the debt of the Farmers Grain and Mercantile Company, and only secondarily a liability of the defendant, is of no concern to plaintiff. The husband had no authority whatever from the wife to create a lien on the homestead with respect to the $750 debt of the defendant. We need, therefore, not discuss the need of written authority or consent of the wife to encumber the homestead. She was under no duty to offer to pay the $750 debt of the defendant in order to be entitled to the relief sought. The judgment must be affirmed, and it is so ordered.