HATTIE MILLER, Appellant, v. HENRY ARMSTRONG et ux., Appellees.

No. 46515.

JULY 28, 1944.

Batschelet & Vincent, of Guthrie Center, for appellant.

H. E. Newton, of Stuart, for appellees.

SMITH, J.— █ The deed in question was signed and acknowledged by plaintiff on December 9, 1939. It ran to defendants but reserved to grantor "the right to possession, use, rent, issues and profits during her lifetime." It was in form a warranty

deed and recited a consideration of "One Dollar and other valuable considerations in hand paid by" defendants.

There is on this appeal the one question presented, Was the deed delivered? The trial court held it was. It was in fact manually delivered, but plaintiff contends, in effect, that the delivery was conditional and not with the intention of making it presently effective.

Appellees are husband and wife, and appellant, Hattie Miller, an unmarried woman sixty-eight years old, is appellee Jennie Armstrong's aunt. The deed was drawn by an attorney and was signed in his office in the presence of the attorney, his secretary, and Jennie Armstrong. The acknowledgment was taken by the attorney. Approximately seventy-three acres are involved. Appellant acquired forty acres of it by deed from her father ("because I stayed at home and took care of him") and the rest by deed from her father's heirs.

Appellant testifies that before going to the lawyer's office she told her niece of her intention of making the deed; that she (appellant) was going to California; that appellees were "to help with the taxes, the interest and payments on the loan and then to buy my parents a good monument." She says further:

"Then when this was done and it was all paid for, they were to have the 33⅓ acres appraised, that is my father's estate that belonged to the heirs, have it appraised by three responsible men and pay the heirs in equal shares. They were not to record the deed. Mrs. Armstrong said that they would take a deed under those circumstances."

Appellant claims all these conditions were repeated in the attorney's office in the presence of Mrs. Armstrong and of the attorney and his secretary. The secretary corroborates her as to the statement they (appellees) were not to record the deed and adds, "* * * she told different things they were going to have to do," specifying particularly payment of taxes and "help with the work around the farm."

The attorney testifies that she (appellant) said she was "making this deed on the condition that the defendants * * * were to help in the payment of taxes, interest and principal

payments''; also, that they were to help in the care and upkeep of the property and ''that they were to make certain payments to certain heirs, that is, her brothers and sisters, on part of this real estate''; and ''that they were to erect a monument in the case of her death for her parents.'' He says ''specifically she asked that the deed was not to be recorded until her death.''

Appellant testifies she did not know the conditions ''were not being put in the deed''; but the attorney says:

''I said to her that all these conditions would be bulky to be put in the deed. She said that wouldn't be necessary * * * because both knew what the conditions were.. And Mrs. Armstrong said 'Yes, we do.' ''

Appellee Jennie Armstrong denies these conversations in the attorney's office, ''unless she [appellant] told it to them'' but admits, ''I was right with her all the time.'' She says that after the deed was signed appellant handed it over to her and said, ''This is yours.'' She also says the only talk about recording was while they were on the way home, when appellant said, ''If anything should happen to me get this recorded as soon as possible.'' She also says: ''Miss Miller did not ask us, either before or at the time the deed was given to help pay the interest and taxes. She asked us if she needed help if we would help her and we told her we would.'' It may be added that appellant testified (over objection) that she thought the deed was not effective until recorded. ''If I had realized it was I would not have delivered the deed.''

Concerning appellant's testimony that appellees eventually ''were to have the 33⅓ acres appraised * * * by three responsible men and pay the heirs in equal shares,'' appellee Jennie Armstrong testifies:

''She never mentioned that to us. She has mentioned it several times that that is what she wanted to do when she got the loan paid off, that she wanted to do that but she didn't ask us to do it. She never demanded it. That was not to be done until her death anyway. I shouldn't think so, at least until the loan was paid off. She never made any demands on us for anything that we refused to do.''

This summarizes the record bearing on the signing and delivery of the deed. Before that time appellees had for some years rented the land in question and lived on a farm west of it. After the deed was given they continued to rent of appellant until about March 1, 1943. In the fall of 1942 she caused a notice to be served on them terminating the tenancy, whereupon they filed the deed for record.

A determination of the appeal does not require that we set out the dealings of the parties with reference to rentals, repairs, government AAA checks, etc., during the tenancy, or the events leading up to and causing the final break in their relations. Appellant does not claim she ever called on them for "help" in paying taxes and interest, or in the purchase of the monument which she has now erected. Her case is not founded on the theory that these were conditions precedent to the vesting of title under the deed or conditions subsequent upon the breach of which the title would be devested.

I. We have the sole question of valid delivery to determine. It is not necessary to go outside our own jurisdiction for cases holding that mere transfer of manual possession from grantor to grantee is not conclusive but that the legal effect of the transaction is a matter of intention. Witt v. Witt, 174 Iowa 173, 177, 156 N. W. 321; Dolph v. Wortman, 185 Iowa 630, 168 N. W. 252; Lawson v. Boo, 227 Iowa 100, 104, 287 N. W. 282; Brien v. Davidson, 225 Iowa 595, 281 N. W. 150, 282 N. W. 480. These are but a few of the many cases that could be cited.

It is also well established that in order to overcome the presumption arising from the possession of the legal title or of the deed the evidence must be clear, convincing, and satisfactory. A mere preponderance is not sufficient. Wagner v. Wagner, 208 Iowa 1004, 1009, 224 N. W. 583; Hild v. Hild, 129 Iowa 649, 106 N. W. 159, 113 Am. St. Rep. 500; Corbin v. McAllister (In re Brigham's Estate), 144 Iowa 71, 79, 120 N. W. 1054; 16 Am. Jur., Deeds, 663, section 398; Jones v. Betz, 203 Iowa 767, 210 N. W. 609, 213 N. W. 282; Burch v. Nicholson, 157 Iowa 502, 137 N. W. 1066; 26 C. J. S., Deeds, 631, 638, section 204.

II. The record here is insufficient to establish nondelivery. We have already reviewed it. The evidence on behalf of ap-

pellant, taken alone, reveals at most an intention that appellees were to perform certain acts not clearly defined. They were to "help" with the taxes, interest, and payments on the loan and to buy a "good" monument. The extent of the "help" and the character of the monument are not shown. The evidence is not clear and satisfactory.

Perhaps the most definite testimony of appellant as to conditions to be performed by appellees is that pertaining to an appraisal of the thirty-three and one-third acres and payment "to the heirs in equal shares." The attorney's corroboration at this point is vague: "That they were to make certain payments to certain heirs, that is, her brothers and sisters, on part of this real estate." We have set out appellee Jennie Armstrong's denials.

Whatever view we may take of the conflicting testimony on this point, it is clear that it relates to a claimed condition that has not yet arisen. The most that could be claimed for it is that it concerns a consideration, the time of payment of which has not arrived.

On the whole record there is no indication of an intention that title should not pass or that the deed was to be held by appellees subject to appellant's right to reclaim it. No one so testifies. If appellant harbored such an intention it was secret and not expressed to appellees or to the attorney and his stenographer.

▮ III. Something is made of the claim that the deed was not to be recorded until appellant's death. If by making that stipulation it be assumed she intended to protect her ownership of the premises during her life, the obvious reply is that she was assured of this protection by the express reservation of a life estate by the very terms of the deed. If it be claimed the deed was only to become effective at appellant's death, the reservation of life estate was manifestly unnecessary and even inconsistent.

Nor would a mistaken belief that the deed was invalid until recorded prevent it from becoming presently effective. See 16 Am. Jur., Deeds, 506, 507, section 123 and cases cited in note 3. Appellant cites Hotaling v. Hotaling, 193 Cal. 368, 224 P. 455, 56 A. L. R. 734, to a contrary doctrine. In that case the

court assumed that both parties to the deed entertained the mistaken belief. The testimony showed that the grantee promised to hold the deed in trust for all the members of the family. The court said that, even if he did not share in the mistaken belief which he knew the grantors had, the grantee, as a trustee, would not be permitted to take advantage of the ignorance and mistake of his cestuis que trustent. In the instant case there is no evidence that appellees thought recording was necessary to make the deed effective or that they knew appellant had any such idea. Appellant also cites Phelps v. Pratt, 225 Ill. 85, 80 N. E. 69, 9 L. R. A., N. S., 945, but it is not in point.

It is to be noted that according to appellant's testimony the break in friendly relations between her and appellees was due to disagreement over the way the premises should be farmed rather than to any failure of appellees to perform the alleged conditions upon which the deed was executed. "They didn't want to farm it the way I wanted it farmed." The notice to quit was given to them as tenants and not as remaindermen. However, it was followed by a prompt recording of the deed and subsequent commencement of this suit.

It is not necessary to consider the effect to be given certain other matters bearing on the credibility of the testimony. The evidence on appellant's behalf is not sufficiently clear, satisfactory, and convincing to warrant setting the deed aside. The decision of the trial court is affirmed.—Affirmed.

All JUSTICES concur.