CARRIE JEPPESEN, appellee, v. DONALD W. JEPPESEN et al., appellants.

No. 49345.

(Reported in 88 N.W.2d 633)

MARCH 11, 1958.

Smith, Peterson, Beckman & Willson, of Council Bluffs, for appellants.

Don H. Jackson, of Council Bluffs, for appellee.

GARFIELD, J.—The sole question we have is whether, prior to plaintiff's marriage to decedent, there was a valid delivery of the deed under which defendants claim to be sole owners of the realty in which plaintiff-widow asserts her distributive share.

Following trial the district court held the deed was not so delivered and established plaintiff's one-third share. While our review is de novo (rule 334, Rules of Civil Procedure) we give weight to the trial court's findings. Nelson v. Nelson, 249 Iowa 638, 639, 87 N.W.2d 767, 768, and citation; Thompson v. Thompson, 240 Iowa 1162, 1171, 39 N.W.2d 132, 137, and citations.

Knud W. Jeppesen died testate April 8, 1955. He owned the real estate in question, an apartment house in Council Bluffs, from March 1, 1952, at least until he made a warranty deed thereof to defendants on September 22 of that year. Knud married plaintiff August 22, 1953. She was then 60, he 68. They lived in one of the apartments in the building until Knud's death and plaintiff continued to reside there. Defendants are Knud's two sons and a daughter by a prior marriage. Plaintiff elected to reject the terms of Knud's will and take her distributive share, commonly called dower. The will, made in 1948, left all property in equal shares to defendants and named defendant Donald Jeppesen executor. Knud's first wife, defendants' mother, died in 1943.

Defendant Franklin Jeppesen testifies his father brought the deed in question to the witness's home the latter part of September 1952, "said he had done this, it was what he wanted, and asked me to take it and put it in my safety deposit box." Franklin says he kept the deed in his home about a week, then took it back to his father and he did not see it again during the father's life.

Over plaintiff's objection to his competency under the dead man statute, section 622.4, Code, 1954, Franklin testifies that in a conversation in which he took no part, in August 1953, his father said plaintiff knew about the deed in question and he and plaintiff had a mutual agreement before they married that their estates would be kept separately and plaintiff, who was present, made no denial.

Defendant Donald Jeppesen says that about January 1, 1953, his father, on his return from Kansas City where his daughter then lived, gave him the deed; after several days he put it in his safe-deposit box in a bank; a considerable time later he removed the deed from the box and left it in a desk in his home, intending to place it in his father's bank box to which he also had a key; "I can't say for sure what I did with the deed next. I assumed I had put it in my father's bank box." The witness finally concluded the deed must have remained in his desk until he took it, together with his father's will, to his attorney a few days after his father died on April 8, 1955.

Plaintiff testifies Donald obtained from her one key to decedent's bank box the day after his death and later obtained from her the other key to the same box. Donald does not deny this. Plaintiff says one key to the box was kept in their desk, the other on her husband's key ring. Two keys for the box were outstanding. Donald did not enter his father's box during any time here relevant except on April 11 and 13, 1955.

Donald says, "I either got the will *and the deed* from the safety deposit box or at least took them out of the box down to the attorney's office on April 11th or 13th." This reference is evidently to his father's box. We understand it is not disputed the will was in that box at testator's death. Donald later testifies he took the deed from his own desk and the will from his father's box and took them together to the attorney's office.

The deed was filed for record with the county recorder, evidently by the attorney for Donald as executor, September 12, 1955, almost three years after its execution, more than two years after plaintiff's marriage and five months and four days after the grantor's death. There is no explanation for the delay unless it be that plaintiff did not elect to claim her distributive share until August 29.

Donald testifies that three or four days before plaintiff and his father were married, "They told us [Donald and wife] * * * she would keep all her property, * * * what he had would all be kept to himself, and *at his death* everything he had would go to we children and everything she had would go to her child." Although an attempt was made to show the witness competent to give this testimony notwithstanding the dead man statute (section 622.4) by his saying he took no part in the conversation, it appears from his own evidence he did take part in it.

It is apparent the testimony just quoted and that of Franklin to like effect are quite inconsistent with defendants' claim the deed had already been delivered with the intention of then conveying title. It is, however, entirely consistent with the idea the grantor did not intend title to pass until his death. And, as we shall point out, there is much other persuasive evidence that leads to this conclusion. If at the time of this claimed conversation the deed had been delivered to then take effect, or if the apartment building was not to be included in the agreement testified to, decedent had no real estate except a cemetery lot and no personalty of substantial value to be the subject of agreement between him and his bride.

A half sister of defendants' mother testifies that in October 1952 she heard decedent say he had deeded the apartment house over to the children.

The above is an indication of the testimony for defendants bearing on the issue of delivery. Plaintiff denies the conversations regarding their property about the time of her marriage to decedent, testified to by Franklin and Donald. She says she knew nothing of the deed until she saw it on the desk in their apartment six weeks to two months before Knud died, he told her it had been in his lockbox before then, none of the defendants ever said anything in her presence about the deed or their ownership of the property. Plaintiff also testifies she and her husband talked of selling the apartment and discussed doing so with Christensen, a realtor; a week after their marriage they paid off the balance of the mortgage on the building; they collected all rents from the apartments and Knud paid all taxes.

There is much evidence from disinterested witnesses that Knud continued in possession and to exercise all rights of owner-

ship over the building until his death. Some of the tenants say they paid their rent to him or to plaintiff. One of them testifies Knud told him several times he was considering selling the apartment because it was too big and upkeep was too great. The realtor Christensen says decedent talked to him after the marriage about selling the apartment and buying a one-family house, he was asking around $20,000 cash for it, the witness showed the building to a prospective buyer without having it listed. The cashier in the county treasurer's office testifies Knud paid the taxes in the fall of 1953 and the spring and fall of 1954 and "every once in a while he would gripe about his taxes."

The evidence just referred to was received without objection. It is not disputed and must be accepted as true. Franklin and Donald lived in Council Bluffs and must have known of their father's continued possession and acts of ownership over the apartment. The deed contains full covenants of warranty without reservation of life estate or right of possession. Donald admits they never claimed any of the apartment rentals while their father lived but says, "We agreed to allow it to be that way."

The above is a sufficient outline of the testimony for plaintiff relevant to the question of delivery.

The trial court found the evidence of defendants, particularly of Donald who must be regarded as their principal witness, was of such character and so contradictory in important respects as to be of doubtful truth and accuracy. We are not persuaded the finding is erroneous.

Few questions have been the subject of more litigation than the validity of delivery of deeds. Delivery is, of course, essential to the effectiveness of a deed. Our own and other precedents agree the intent of the grantor is the controlling element in the matter of delivery. Or, as many of them say, the question of delivery is largely one of intent of the grantor, to be determined by his acts or words or both. Graham v. Johnston, 243 Iowa 112, 115, 49 N.W.2d 540, 542; Hilliard v. Hilliard, 240 Iowa 1394, 1398, 1399, 39 N.W.2d 624, 626, and citations; Gilmer v. Neuenswander, 238 Iowa 502, 507, 28 N.W.2d 43, 46; Huxley v. Liess, 226 Iowa 819, 823, 285 N.W. 216; Lathrop v. Knoop, 202 Iowa 621, 623, 210 N.W. 764, and

citations; Annotation, 129 A. L. R. 11; 30 Iowa Law Review 108–112; 26 C. J. S., Deeds, section 41.

■■■ While manual transfer of the deed from grantor to grantee is prima-facie evidence of delivery it is not conclusive. For a valid delivery the grantor must intend the deed to be presently effective as a transfer of title without any reservation of control thereover. See Gilmer v. Neuenswander, supra, 238 Iowa 502, 507, 28 N.W.2d 43, 46; Dyson v. Dyson, 237 Iowa 1285, 1291, 25 N.W.2d 259, 262; Miller v. Armstrong, 234 Iowa 1166, 1169, 15 N.W.2d 265, 269, and citations; Lathrop v. Knoop, supra, 202 Iowa 621, 623, 210 N.W. 764, and citations; Dolph v. Wortman, 191 Iowa 1364, 1373, 1374, 183 N.W. 814; Kimbro v. Kimbro, 199 Cal. 344, 249 P. 180, 183; French v. Dillon, 120 W. Va. 268, 197 S.E. 725; 26 C. J. S., Deeds, section 42c, pages 687, 688; 16 Am. Jur., Deeds, section 122 ("Nor is there a delivery * * * where the deed is given to the grantee with the intention that it shall become operative only on the death * * * of the grantor * * *.").

■■ The fact a deed has been duly executed and recorded ordinarily raises a rebuttable presumption of delivery. This is evidently based on the notion that, as only instruments duly delivered are recordable, such delivery should be inferred, rather than the surreptitious act of handing a deed never delivered to the recorder. Stiles v. Breed (Ladd, J.), 151 Iowa 86, 91, 130 N.W. 376, 378; Byers v. Byers, 242 Iowa 391, 411, 46 N.W.2d 800, 811.

It has been held in several jurisdictions the presumption just referred to does not arise where the deed is not recorded until long after its date or after the grantor's death. 26A C. J. S., Deeds, section 187, page 27, and cases cited notes 31 and 31.5.

However, we have said several times a presumption of delivery arises from recording the instrument even after the grantor's death. Webb v. Webb, 130 Iowa 457, 462, 104 N.W. 438; Stiles v. Breed, supra, 151 Iowa 86, 90, 91, 130 N.W. 376, 378; Jones v. Betz, 203 Iowa 767, 768, 210 N.W. 609, 213 N.W. 282; Hodgson v. Dorsey, 230 Iowa 730, 733, 298 N.W. 895, 896, 137 A. L. R. 456; Ferrell v. Stinson, 233 Iowa 1331, 1336, 11 N.W.2d 701, 703; Dyson v. Dyson, supra, 237 Iowa 1285, 1287,

25 N.W.2d 259, 260. A decision to like effect is Bertoch v. Gailey, 116 Utah 101, 208 P.2d 953.

We have, however, held the fact the grantee does not obtain possession of the deed or it is not filed for record until after the grantor's death tends to rebut delivery but is not conclusive of nondelivery. Heavner v. Kading, 209 Iowa 1275, 1276, 228 N.W. 313; Blain v. Blain, 215 Iowa 69, 74, 244 N.W. 827. See also Reichert v. Wilhelm, 83 Iowa 510, 512, 50 N.W. 19. The effect of all our decisions on the question seems to be that the presumption of delivery is stronger where the deed is filed for record in the grantor's life than where the filing occurs thereafter.

Ordinarily the burden to prove nondelivery of a recorded deed rests on the party so alleging and the evidence thereof must be clear and satisfactory or, as we have sometimes said, clear, satisfactory and convincing. Byers v. Byers, 242 Iowa 391, 411, 46 N.W.2d 800, 811, and citations; Klein v. Klein, 239 Iowa 40, 47, 29 N.W.2d 163, 166; Miller v. Armstrong, supra, 234 Iowa 1166, 1169, 15 N.W.2d 265, 266, 267. Circumstances may overcome the presumption of delivery and the required clear and satisfactory proof is made when facts to the contrary are established. Byers case, supra, and citations.

It is our opinion that when the findings of the trial court are given the weight to which they are entitled we are not justified in reaching a conclusion contrary to his. It is true, as we have indicated, the manual possession of the deed prior to decedent's death is in dispute. But the undisputed acts and conduct of decedent and his sons as well as statements the sons say their father made about the time of his marriage clearly negative his intent that the deed take effect as a present transfer of title prior to the marriage.

It must be accepted as true that decedent did not intend to, and did not in fact, surrender dominion over the property while he lived. Defendants, who were adults, must have understood this. The grantor's purpose to retain dominion over the building would be consistent with a present transfer of title, reserving a life estate to him. But, as explained, the deed was not so drawn. It is a full warranty deed. If the deed was delivered prior to the marriage the grantees became then vested

with full title and immediate right of possession. If defendants are entitled to prevail now they could have enforced their claim prior to their father's marriage. Yet they asserted no claim to the property during his life.

Since it appears without dispute the grantor intended to retain a life estate the only way he could effectively do so, under this deed, was to withhold delivery or transfer it to a third party with directions to deliver it to the grantees after his death. There is no evidence he ever contemplated delivery through a third party. We think the reasonable conclusion is that decedent did not intend the transfer of title to take effect during his life.

That the grantor's continued possession and control of the property and exercise of acts of ownership over it strongly negative delivery see Brown v. North, 141 Iowa 215, 218, 119 N.W. 629; Dolph v. Wortman, supra, 191 Iowa 1364, 1375, 183 N.W. 814; Thompson v. Thompson, 240 Iowa 1162, 1170–72, 39 N.W.2d 132, 137, 138; Kelly v. Bank of America Nat. T. & S. Assn., 112 Cal. App.2d 388, 246 P.2d 92, 34 A. L. R.2d 578, 588; Larison v. Taylor, 83 Colo. 430, 266 P. 217, 222; Klajbor v. Klajbor, 406 Ill. 513, 94 N.E.2d 502, 505; Patten v. Knowe, 354 Ill. 156, 188 N.E. 173; Spero v. Bove, 116 Vt. 76, 70 A.2d 562; French v. Dillon, supra, 120 W. Va. 268, 197 S.E. 725, 726, 727; Annotation, 129 A. L. R. 11, 35; 16 Am. Jur., Deeds, section 133; 26 C. J. S., Deeds, section 42a, page 686.

4 Tiffany Real Property, Third Ed., section 1045, page 222, states: "* * * that the grantor acts as if the title had or had not passed to the named grantee would certainly appear to be strong evidence of his intention that the instrument should or should not operate to pass the title."

The testimony of defendants' aunt that she heard decedent say he had deeded the apartment to the children was admissible. Carlson v. Bankers Trust Co., 242 Iowa 1207, 1216, 50 N.W.2d 1, 7, and citations. See also Kelly v. Bank of America Nat. T. & S. Assn., supra, 112 Cal. App.2d 388, 246 P.2d 92, 34 A. L. R.2d 578, 585, and annotation, 588. But it is not inconsistent with the view he intended the deed to take effect only upon his death. Wilenou v. Handlon, 207 Ill. 104, 69 N.E. 892, 896.

In the main this case resembles Dyson v. Dyson, supra, 237 Iowa 1285, 25 N.W.2d 259, which affirms a decision there was not a valid delivery of the deed. And in two important respects the claim the Dyson deed was delivered was stronger than the claim of delivery here. That deed reserved a life estate to the grantor and it was filed for record during the grantor's life. Gilmer v. Neuenswander, supra, 238 Iowa 502, 28 N.W.2d 43, is another decision that supports our holding here. See also Dolph v. Wortman, supra, 191 Iowa 1364, 1375, 183 N.W. 814.—Affirmed.

All JUSTICES concur except PETERSON, C. J., who takes no part, and SMITH, J., not sitting.