DOLLIE M. ROBINSON et al., appellees, v. VERDA S. LOYD et al., appellants.

No. 50303.

(Reported in 109 N.W.2d 619)

June 13, 1961.

Garold F. Heslinga, of Oskaloosa, for appellants.

Life, Davis & Life, of Oskaloosa, for appellees.

THOMPSON, J.—Separate petitions were filed by Dollie M. Robinson and Billie Lucille Snodgrass against the defendants,

each praying that title be quieted to certain described real estate in the City of Oskaloosa. The chief protagonists were plaintiff Dollie M. Robinson and defendant Verda S. Loyd. Billie Lucille Snodgrass holds her title, if any, through Dollie M. Robinson, and Ray C. Loyd is made a party defendant only because he is the husband of Verda S. Loyd. Dollie M. Robinson will hereinafter be referred to as the plaintiff and Verda S. Loyd as the defendant. The two actions were consolidated for trial, with a resulting decree and judgment for the plaintiffs, quieting title in them to the real estate as prayed. Several parcels of realty, all in the City of Oskaloosa, are involved. The defendants bring their appeal to this court.

At the time of the trial in 1960 the plaintiff was 84 years of age. She had been married to William M. Robinson in 1897, and this relation continued until his death on November 15, 1958. They had operated a neighborhood grocery in Oskaloosa for many years prior to 1945, when they retired. One child was born to them, Raymond Paul Robinson, also known as R. P. Robinson. By Raymond's first marriage he had one child, Billie Lucille Robinson, now Billie Lucille Snodgrass, who is the plaintiff in one of the consolidated actions. This marriage was terminated by divorce in 1928, and in the same year Raymond married the defendant, who is now Verda S. Loyd. By her he had five children. He was killed in a mine accident on May 13, 1936. In 1945 Verda married her present husband, the defendant Ray C. Loyd.

The plaintiff and her husband were apparently thrifty people, and they accumulated a modest competence, represented largely, if not altogether, by several parcels of real estate in Oskaloosa. Title to each was taken in the name of Dollie M. Robinson. Several of these are the subject of the present litigation. On May 17, 1956, Dollie M. Robinson and William M. Robinson conveyed three of them to their granddaughter Billie Lucille Robinson Snodgrass, the only child of their son Raymond by his first marriage. A life estate was reserved by the grantors in writing in the deed. This deed was recorded within a few days thereafter. Whether the title to these properties, and of several other parcels still claimed by plaintiff Dollie M. Robin-

son, had been previously conveyed by a valid conveyance, or conveyances, is the question for determination in the consolidated cases. We shall assume for the purposes of this case that the title of Billie Lucille Robinson Snodgrass depends upon the validity of the title of Dollie M. Robinson at the time of the conveyance to her, in 1956. Further, since we reach the conclusion that the decree and judgment of the trial court was right and should be affirmed, we do not set out the legal descriptions of the property involved, which are fully covered therein. A slight and unimportant error in description in the deed to Billie Snodgrass is also corrected in the trial court's decree.

The important question for determination is whether there was an effective delivery of certain deeds relied upon by the defendant, which purported to convey all of the property involved to her. The important deed, upon which defendant seems chiefly to rely, is dated September 25, 1948, and is known in the record as Exhibit 1. It covers all of the parcels of realty involved, and others. It is a warranty deed running from Dollie M. Robinson and William M. Robinson, her husband, to Verda S. Loyd, and was recorded on January 3, 1959. On February 25, 1932, the same grantors had executed to R. P. Robinson and Verda S. Robinson four separate warranty deeds, for the recited consideration of one dollar and love and affection, which purported to convey most of the real estate covered by Exhibit 1. These latter deeds are Exhibits 3, 5, 7 and 8, and were never recorded. On December 10, 1935, Dollie M. Robinson having in the meantime acquired title to Lot 18, of Greenview Park Addition to the City of Oskaloosa, the same grantors conveyed this real estate to the same grantees by warranty deed, which recites the same consideration. This is Exhibit 9, and is likewise unrecorded.

On July 29, 1936, after the death of R. P. Robinson, the same grantors conveyed to Verda S. Robinson by warranty deed, for the same recited consideration, all of the real estate which had been previously deeded to R. P. Robinson and Verda S. Robinson. This deed, Exhibit 11, also was not recorded. After this Dollie M. Robinson obtained title to a small strip of real estate described as "A strip of ground six feet in equal width

off from the entire east side of the West One-half of the East two-thirds of Lot 6, in Block 7 West Oskaloosa." This strip is included in the deed of September 25, 1948, Exhibit 1; otherwise Exhibit 1 contains the identical description shown in Exhibit 11. Each deed, and the previous deeds Exhibits 3, 5, 7 and 8 inclusive, cover all the property to which the plaintiffs seek to quiet title in this action, as well as some parcels not herein involved.

I. The question of what constitutes an effective delivery of a deed has been often before us, and certain rules of law are well settled. We assume for the purposes of this discussion that when the deed Exhibit 1 was recorded, a presumption arose of a delivery with the present intent of passing immediate title, and the right to possession. This presumption can be rebutted only by evidence which is clear, convincing and satisfactory. However, delivery depends upon intent, and even a physical transfer of the instrument of a conveyance to the grantee does not necessarily and in all cases make a valid delivery. Authority supporting these thoroughly established principles is found in Dyson v. Dyson, 237 Iowa 1285, 25 N.W.2d 259; Jeppesen v. Jeppesen, 249 Iowa 702, 88 N.W.2d 633; Thompson v. Thompson, 240 Iowa 1162, 39 N.W.2d 132; in the other authorities cited therein; and in many other of our decided cases. It remains to apply them to the facts appearing in the record before us.

It is also a settled rule of law that, while equity cases are triable de novo upon appeal to this court, we give weight to the findings of fact of the trial court; and this is particularly true when the facts so found depend much upon the credibility of the witnesses. Thompson v. Thompson, supra, at pages 1170, 1171 of 240 Iowa, page 137 of 39 N.W.2d. The able trial court in the case at bar made a meticulous and well-supported finding of facts, with the soundness of which we are impressed. The evidence was carefully reviewed and we think without question the proper evaluation was made.

II. The evidence shows without dispute that at all times after the making of the various deeds plaintiff retained full possession and control of all the properties described there-

in. She collected the rents, paid the taxes, insurance and maintenance, and in fact sold some of the parcels of realty; all this with the full and admitted knowledge of defendant and without any protest or objection by her. Thus, on May 1, 1954, plaintiff and her husband entered into a written contract of sale of the "West One-half of Lots Two (2) and Three (3) of Baugh's Subdivision of Outlot Three (3) of Loughridge & Cassidy's Addition to the City of Oskaloosa" to Thomas B. Chambers and Geraldine Chambers, husband and wife. This is one of the properties involved in the present proceeding. The purchasers have occupied the property at all times since the date of the contract. They had rented it from plaintiff for about twenty years prior to the purchase. All payments of rent and of installments on the contract were made to plaintiff. At no time did defendant make any objection to this procedure, although if her position in the present litigation is sound she was at all times the owner of the real estate and entitled to its possession and its proceeds. On May 28, 1958, plaintiff and her husband conveyed by warranty deed to J. B. Long a parcel described as "Lots Thirteen and Fifteen of Greenview Park Addition to the City of Oskaloosa." This property is not involved in the present action; but it was described and purportedly conveyed to defendant both in Exhibits 1 and 7 above referred to. No objection was made by defendant to the sale of this property and no demand has ever been made by her for the proceeds.

In explanation of this, defendant says that it was the understanding when the conveyances were made to her that plaintiff might do as she wished with the various properties described in the deeds, and might have the income during her life. It is evident that if we are to consider Exhibit 1 and the various deeds which preceded it as full conveyances, delivered with the intent to become presently effective, defendant was at once entitled to immediate possession of the properties, and to the income, rents and profits. But without question, it is certain that neither plaintiff nor defendant so considered the matter. The situation here is identical with that which we considered in Jeppesen v. Jeppesen, supra, 249 Iowa 702, 88 N.W.2d 633. There we said: "The deed contains full covenants of warranty without

**1092**

reservation of life- estate or right of possession. Donald admits they never claimed any of the apartment rentals while their father lived but says: 'We agreed to allow it to be that way.' " 249 Iowa, at page 707, 88 N.W.2d, at page 636.

In the same case we also said: "While manual transfer of the deed from grantor to grantee is prima-facie evidence of delivery it is not conclusive. For a valid delivery the grantor must intend the deed to be presently effective as a transfer of title without any reservation of control thereover." Numerous authorities are cited, see 249 Iowa, page 708, 88 N.W.2d, pages 636, 637.

Continuing with our analysis of the Jeppesen case, supra, we find this pertinent language: "That the grantor's continued possession and control of the property and exercise of acts of ownership over it strongly negative delivery see Brown v. North, 141 Iowa 215, 218, 119 N.W. 629; * * *." Many other authorities are cited immediately following, including this quotation from 4 Tiffany Real Property, Third Ed., section 1045, page 222: " '* * * that the grantor acts as if the title had or had not passed to the named grantee would certainly appear to be strong evidence of his intention that the instrument should or should not operate to pass the title.' " 249 Iowa, at page 710, 88 N.W.2d, at page 638.

Defendant as a witness was cross-examined at length as to her version of the understanding at the time the several deeds were made. At times she said they were made to be recorded after the death of the grantor, so that her estate need not be probated, at least so far as the real estate was concerned. Again, she said she was to record the deeds if the grantor and her husband "became incompetent or unable, sick or if they took a trip, they might be injured or anything, I was to record the deeds." At another point she said she was to record them "whenever I wanted to." Although she was long trained in legal procedures as a secretary in a prominent law office in Oskaloosa and drew the deeds upon which she now relies, they contained no reservation of a life interest in the grantor, but she says that was the verbal understanding at the time of their execution. Her testimony, taken as a whole, leaves the impression that any agreement as to

recording or possession of the property was not clearly defined; and so far as it supports her claim of a right to immediate possession, or to the rents and profits, or that there was in fact an understanding that the grantor intended a full conveyance of the fee with a life estate reserved, it is strongly contradicted by other testimony and by the undisputed facts. A quite similar situation was analyzed by this court in these words:

"The deeds in themselves are cogent evidence that there was no delivery and no intention on plaintiff's part to deliver them. The deeds were absolute conveyances without any reservations for her benefit. An effective delivery of the deeds would have passed title from her to her home and the income-producing farms. A transaction of that kind would have been contrary to common experience and far out of the usual and ordinary. Its unwisdom speaks most convincingly of the unlikelihood that it was ever effected or contemplated." Thompson v. Thompson, supra, 240 Iowa 1162, 1171, 39 N.W.2d 132, 137, 138.

III. Defendant relies much upon Hilliard v. Hilliard, 240 Iowa 1394, 39 N.W.2d 624. From the authority of this case she reasons that a life estate may be established by an oral agreement, even though no reservation thereof is included in the deed. Some further reference to the record becomes necessary here. At the opening of the trial defendant's counsel said: "As to all parcels of real estate involved in this controversy the defendants admit and acknowledge that Dollie M. Robinson, one of the plaintiffs herein involved, has a life interest or life estate." To which plaintiff's counsel replied: "We don't accept it."

At first glance the offer to give something and its rejection by the proposed donee seem unusual and hardly in accord with human nature. But the purpose of the proposed concession seems evident upon second thought, and plaintiff's rejection of it as coming from Greeks bearing gifts is entirely reasonable. Defendant was faced with the inescapable facts that she had at all times permitted plaintiff to possess the properties, take the rents and other income, and pay all charges. There was no reservation of a life estate in any of the deeds; but if a reserved life estate, even though by oral agreement could be established, reason for the continued possession by the grantor might appear. Dolph v.

Wortman, 191 Iowa 1364, 1374, 183 N.W. 814, 819. Assuming that Hilliard v. Hilliard, supra, established, as defendant claims, that a life estate may be reserved and shown by evidence outside the deed itself, defendant was still faced with the necessity or proving that such an agreement had been made. Again we find a close parallel in a decided case, Thompson v. Thompson, supra. On this point we said: "She offers to give plaintiff a life estate in the property, although such estate is not reserved in the deeds under which defendant claims title.· * * * The burden which she assumes is a heavy one. The conduct of Howard and of his mother since the execution of the deeds effectively · refute the claims and contentions of the defendant." 240 Iowa, pages 1171, 1172, 39 N.W.2d, page 138.

IV. Other matters appear which strongly support the decree and judgment of the trial court. The execution of the earlier deeds, Exhibits 3, 5, 7, 8, 9 and 11, must be considered. Exhibits 3, 5, 7, 8 and 9 ran to R. P. Robinson and Verda S. Robinson. Apparently the physical possession of these conveyances was at all times in defendant. At least she produced them on the trial. The evidence indicates they were made for the same purpose as the deed, Exhibit 1, which defendant recorded more than eleven years after its execution. Yet it is evident that neither plaintiff nor defendant considered these deeds, and including Exhibit 11, which ran only to Verda S. Robinson, to be valid conveyances. If Exhibits 3, 5, 7, 8 and 9, which included all of the realty now in controversy, were valid, R. P. Robinson had a substantial interest therein. The only way in which his apparent interest could be ignored was on the theory that the deeds were not intended to be effective; which means, under the circumstances here, that there was no delivery with the present intent of passing title and the right to possession. Defendant's testimony, while confused, is that there was the same understanding as to Exhibits 3, 5, 7, 8 and 9 as to Nos. 11 and 1. Exhibit 11 was made after her husband's death and ran to her as Verda S. Robinson. Exhibit 1 was made later, after her marriage to Ray C. Loyd. She says of the reason for Exhibit 11 that it was made "to put the legal title in me." This, of course, could not be done if the preceding deeds were valid. Of Exhibit 1 her testimony is "I didn't feel that I

needed a new deed." Her version is that this was done because plaintiff wanted the properties put in defendant's then married name. In the making of Exhibits 11 and 1 after the death of R. P. Robinson all parties evidenced their understanding that Exhibits 3, 5, 7, 8 and 9, in which he appeared as one of the two grantees, were not intended to be effective. But there was no different agreement as to them than as to Exhibits 11 and 1. The intent of both plaintiff and defendant that none of the deeds was to be presently effective clearly appears.

V. Again, we find a close parallel to the facts in this case in Dolph v. Wortman, supra, 191 Iowa 1364, 1375, 183 N.W. 814, 819. There the defendant, although claiming under only one deed, was in the position of attempting to prove several deliveries of it, at different dates. We said:

"If there was a first delivery in August, 1895, with the intention of the grantor, why should there have been a second delivery? To prove a delivery in 1901 was to prove impliedly that there had been no previous delivery; and this is a significance which attaches to each * * * successive delivery. Appellants' case would be stronger with proof of *one* delivery than with proof of *five.*"

So here, if the deeds Exhibits 3, 5, 7, 8 and 9 were valid, as defendant's evidence asserts, there was no need of Exhibits 11 and 1. In fact, as we have pointed out in the immediately preceding division, plaintiff and defendant would have had no right to suppress Exhibits 3, 5, 7, 8 and 9, through which the heirs or devisees of R. P. Robinson would have had an interest in the properties described. The making of the later conveyances, Exhibits 11 and 1, was an implied recognition by both plaintiff and defendant that the earlier deeds were not valid; that is, as applied to the situation here, that they were not delivered with the intent that they be presently effective to pass title and right of possession. But the evidence indicates, as we have pointed out, that there was no difference on this point between any of the several conveyances.

We think the record shows by clear, convincing and satisfactory evidence that plaintiff at no time delivered any conveyance, or conveyances, of the real estate involved in this litiga-

tion with the present intent to pass good and effective title. The decree and judgment of the trial court was right.—Affirmed.

All JUSTICES concur.