# IN THE COURT OF APPEALS OF IOWA

No. 20-0137
Filed June 16, 2021

**RONALD LAINE KING, LILLIE LORRAINE JACKSON, and MONA RAY BENNETT,**
     Plaintiffs-Appellees,

**vs.**

**WARD ELWYN SMITH and CAROLYN STANLEY,**
     Defendants-Appellants.
_____

Appeal from the Iowa District Court for Davis County, Shawn R. Showers,

Judge.

The sibling-appellants challenge the district court ruling granting the nieces-

and nephew-appellees' petition to partition family farmland. **AFFIRMED IN PART**

**AND REVERSED IN PART.**

R.E. Breckenridge of Breckenridge Law P.C., Ottumwa, for appellants.

Edward E. Cox of Craver, Grothe & Cox, LLP, Centerville, for appellees.

Heard by May, P.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

The best made plans can be defeated without the proper tools. We see that scenario play out in this legal dispute over family farmland. The plaintiffs, Ronald King, Lillie Jackson, and Mona Bennett, are siblings. They are the nephew and nieces of the defendants, Ward Smith and Carolyn Stanley. The plaintiffs brought the underlying suit, seeking to partition the family farmland as conveyed by their grandparents, Charley and Lillie Smith, in 1974.[1] Relying on later deeds executed by Lillie Smith that left out the plaintiffs' mother, Mona Vee King, from inheriting the property, the defendants denied the plaintiffs had any interest in the farmland[2] and asked the court to quiet title in their names.

The district court granted the plaintiffs' petition for partition, finding only the 1974 deed was valid and the language of that deed established a life estate in Lillie Smith, which limited her ability to later divest the plaintiffs' mother of her interest. For the same reasons, it denied the defendants' request to quiet title in their names. On appeal, the defendants argue the intention of the grantor should control and we should recognize the conveyances even if their use has not been authorized in Iowa.

---

[1] We generally refer to individuals by their first and last names throughout, as multiple people in this family share first names or last names.

[2] As explained later in this opinion, a separate document required Ward Smith and Carolyn Stanley to pay a total of $25,000 to Mona Vee King's children upon her demise. The record contains no information establishing the basis for that number or if that payment was to compensate the children for their mother's share in the real estate.

**I. Background Facts and Proceedings.**

In February 1974, Charley and Lillie Smith executed a "warranty deed," in which they conveyed the family farm to their children, Mona Vee King, Carolyn Stanley, and Ward Smith, as tenants in common. The deed also included this language:

> Grantors herein reserve unto themselves, and each of them, or the survivor of them, for their natural lives or the natural life of the survivor of them, all the rights of possession, rents and profits of the above described real estate, and further reserve unto themselves, each of them, or the survivor of them, the right to mortgage, sell, or transfer said property for and during their natural life and the natural life of the survivor of them, in accordance with Supreme Court decisions of the State of Iowa, without the consent of the grantees herein. It is understood by grantors herein that they are creating or retaining an estate in joint tenancy with right of survivorship in the above described property for themselves as husband and wife.

The deed was recorded in 1982.

Charley Smith died in approximately 1993.[3]

On June 1, 2006, Lillie Smith executed another "warranty deed" for the same farmland.[4] With the 2006 deed, Lillie attempted to convey the property to just two of her children—Carolyn Stanley and Ward Smith—as tenants in common. The mother of the plaintiffs, Mona Vee King, was excluded from this deed. The deed included similar language as the 1974 deed, stating:

> Grantor herein reserves unto herself, for her natural life, all the rights of possession, rents and profits of the above described re[a]l estate, and further reserves unto herself, the right to mortgage, sell, or transfer said property for and during her natural life, in accordance with Supreme Court decisions of the State of Iowa, without the consent of the grantees herein.

---

[3] The record contains conflicting detail about Charley's year of death.
[4] Carolyn Stanley drafted the 2006 warranty deed signed by her mother.

The same day, Lillie Smith executed a "directive and agreement," in which she said she was "attempt[ing]" to explain her decision to exclude Mona Vee King from the 2006 conveyance.  It said, in part:

> All of my children worked equally hard and contributed in various manners to assist their father and me in paying for this farm. The family is aware that Mona Vee King has received State funds to pay for extended and ongoing medical care in the amount of thousands of dollars; it would not be fair that two of my children should be penalized for a debt created by the other one of my children should the State of Missouri attach a lien to an interest in my farm.  With this in mind it is my decision to make the above conveyance excluding Mona Vee King.  It is with much love and a request for her understanding that I have made this decision.
>
> It is my express directive to my daughter Carolyn Stanley and my son Ward Elwyn Smith that upon Mona Vee King's demise they are to pay the sum of Twenty-five Thousand Dollars ($25,000.00), in equal shares to Mona Vee King's heirs; specifically stated: Laine King, Lillie Lorraine (Lorrie) Jackson, Wayne King, Kelly King, and Mona Rae (Missy) Bennett, each to receive the sum of Five Thousand Dollars ($5,000.00).

Carolyn Stanley and Elwyn Smith also signed the document, and they "agree[d] to abide by the . . . expressed desires of [their] mother."  Although Carolyn Stanley testified her sister initiated the conversation about transferring assets because of Mona Vee King's health condition, the "directive and agreement" was not signed by Mona.[5]

Neither the 2006 deed nor the directive and agreement were ever recorded, and the originals were misplaced.

In July 2010, Mona Vee King died.  She was survived by her five children: Laine King, Lillie Jackson, Wayne King, Kelly King, and Mona Rae Bennett.  Ward

---

[5] Mona Vee King did execute a June 2005 quitclaim deed to her son, Floyd King, transferring her Missouri home to him.

Smith and Carolyn Stanley did not make the $5000 payments to Mona Vee King's heirs as they had agreed under the "directive and agreement."

Then in October 2010, after Carolyn Stanley realized the 2006 deed had been misplaced, Lillie Smith executed another warranty deed—this one drafted by an Iowa attorney. This deed stated it conveyed the farmland to Carolyn Stanley and Ward Smith as "joint tenants in common with full rights of survivorship, and not as tenants in common." In an attached addendum, Lillie again "reserve[d] unto herself for her natural life all the rights to possession, rents and profits of" the farmland and "reserve[d] the right to Mortgage, sell or transfer said property for her natural life, in accordance with Supreme Court decisions of the State of Iowa, without the consent of the grantees herein." With the reason for removing Mona Vee King's interest gone given her July death, no explanation was offered at trial about the need for the 2010 deed. There was an attempt to have the 2010 deed recorded, but the recorder's office refused.

Lillie died intestate in approximately 2013 or 2014.[6] No estate was opened, and nothing happened with the farmland.

Then sometime in 2016, the plaintiffs received payments from MidAmerican Energy Company representing their interest in farmland purchased in a sale. Mona Bennett testified that until then "it was always our assumption that when Mom died, our interest in the farm died." With confirmation of the grandchildren's interests, in 2017, Carolyn Stanley and Ward Smith asked each of Mona Vee King's five children to execute quitclaim deeds regarding any interest they may

---

[6] Again, the record is conflicting on Lillie's year of death.

have in the farmland in exchange for $5000, as outlined in Lillie Smith's 2006 directive. In June, one of Mona Vee King's children—Kelly King—signed a quitclaim deed for any interest he had in the farmland and conveyed it to Carolyn Stanley and Ward Smith as tenants in common.[7] He was paid $5000.

Notwithstanding that quitclaim deed, in July, all five of Mona Vee King's children executed a Title Standard 9.8 Affidavit,[8] stating their mother died in July 2010 and the five people signing were her survivors and were in complete, actual, and sole possession of her one-third interest in the farmland. This affidavit was recorded by the Davis County Recorder's Office on August 9, 2017.

About two months later, two of Mona Vee King's children, Floyd King and Kelly King, executed quitclaim deeds conveying their purported interest in the farmland to their siblings—the plaintiffs.

In 2018, the plaintiffs petitioned the court to partition the family farm. They alleged defendants Carolyn Stanley and Ward Smith each had a one-third interest in the property, with the three plaintiffs splitting the other one-third interest. The plaintiffs asked the court to order the land sold and the proceeds split in proportion to each person's interest.

The defendants responded, denying that the plaintiffs had any interest in the family farm. Relying on the 2006 and 2010 deeds,[9] they asked the court to quiet title in their names as joint tenants.

---

[7] Carolyn attempted to have this quitclaim deed recorded on July 31, 2017, but the Davis County Recorder refused, citing issues with the margins on the document and an incomplete "declaration of value" and "groundwater hazard statement."

[8] This is also known as an affidavit of heirship.

[9] The 2006 deed and directive were found sometime during this action.

After a bench trial, the district court granted the plaintiffs' petition to partition the farmland and denied the defendants' request to quiet title in their names. The court concluded that while the 1974 deed was valid, the right to retain the "power of disposal"—as Lillie and Charley Smith had attempted to retain for themselves[10]—has not been recognized in an inter vivos transfer in Iowa (as opposed to a testamentary transfer). The court was persuaded that the 1974, 2006, and 2010 deeds were all attempted beneficiary or transfer-on-death deeds, and found no authority for such a deed in Iowa. Seemingly severing the language it concluded was impermissible, the court determined a life estate was created by this language of the 1974 deed: "Grantors herein reserve unto themselves, and each of them, or the survivor of them, for their natural lives or the natural life of the survivor of them . . . ." Then the court concluded that because Lillie and Charley Smith only retained a life estate with the 1974 deed, Lillie Smith could not divest Mona Vee King of her remainderman interest and she could not convey the same farm property a second time—making the 2006 and the 2010 deeds invalid. Following a successful motion to enlarge by the defendants, the district court concluded Kelly King had conveyed his interest in Mona Vee King's portion of the property to Carolyn Stanley and Ward Smith by quitclaim deed in June 2017; his later conveyance to the plaintiffs was invalid. This left Carolyn Stanley and Ward Smith each with a 33/90 interest in the farmland, Ronald King and Lillie Lorraine each with a 9/90 interest, and Mona Bennett with a 6/90 interest.

---

[10] Specifically, Lillie and Charley Smith purported to retain "all the rights of possession, rents and profits of the [property], and . . . the right to mortgage, sell, or transfer said property for and during their natural life and the natural life of the survivor of them . . . without the consent of the grantees herein."

The defendants appeal.

**II. Standard of Review.**

"Actions to partition real or personal property are equitable proceedings, which we review de novo." *Newhall v. Roll*, 888 N.W.2d 636, 640 (Iowa 2016). Similarly, "[a]ctions to quiet title are triable in equity and reviewed on appeal de novo." *Krotz v. Sattler*, 586 N.W.2d 336, 338 (Iowa 1998).[11]

**III. Analysis.**

While both the plaintiffs and the defendants presented multiple alternative theories to the district court about who retains what interest in the farmland and why, our first question is which, if any, of the three deeds are valid.

To begin, we start by defining some key terms and pointing out important distinctions between them. First, "transfer-on-death" deed and "beneficiary" deed can be used interchangeably. This type of deed "automatically conveys the property to a designated person upon the property owner's death"; it "avoids probate by allowing a property owner while living to make a grant of real property to the owner's heirs but does not effect a change of ownership until after the

---

[11] Under the Iowa Rules of Civil Procedure as they existed at the time plaintiffs brought this suit, rule 1.1207 prevented counterclaims in partition actions "[e]xcept . . . [a]ny party may perfect or quiet title to the property, or have an adjudication of the rights of any or all parties as to any or all matters growing out of or connected with the property . . . ." As of July 1, 2018, counterclaims in partition actions are controlled by Iowa Code section 651.7 (2018), which states:

> A party may perfect or quiet title to property that is subject to a partition petition or request adjudication of a right of a party as to any matter originating from or connected to the property, including a lien between any parties. Except as permitted by this section, a joinder of any other claim to a partition petition shall not be permitted. A counterclaim to a partition petition shall not be permitted.

grantor's death." *Beneficiary Deed*, *Black's Law Dictionary* (11th ed. 2019). With a transfer-on-death[12] deed, "[d]uring the owner's lifetime, *the beneficiaries have no interest in the property*, and the owner retains full power to transfer or encumber the property or to revoke the [transfer-on-death] deed." *URPTDA*, prefatory note (emphasis added). A life estate is not created by a transfer-on-death deed; the property owner retains all rights and interests in the property until their death. This is in contrast with an "enhanced-life-estate" or "Lady Bird" deed. This deed "allows a property owner *to transfer ownership of the property* to another while retaining the right to hold and occupy the property and use it as if the transferor were still the sole owner." *Lady Bird Deed*, *Black's Law Dictionary* (11th ed. 2019) (emphasis added). "It is used in a few states as an estate-planning tool to avoid probate. It enables a person to qualify for Medicaid while keeping a private home . . . ." *Id.*

Here, the district court concluded Charley and Lillie Smith's 1974 deed was an attempted transfer-on-death deed. The defendants seem to concede as much on appeal. They contend "no estate was actually created for the surviving children by the 1974 deed" and point to the fact the deed explicitly contradicts that Charley and Lillie were trying to retain a life estate as it says they were "creating or retaining an estate in joint tenancy with right of survivorship in the above described property

---

[12] Going forward, we choose to use only the term transfer-on-death deed. While some states use the term "beneficiary deed," "the term 'transfer on death deed' is preferred, to be consistent with the transfer on death registration of securities." *Uniform Real Property Transfer on Death Act*, § 2 cmt.6 (Nat'l Conf. of Comm'rs on Unif. State Laws 2009) (hereinafter *URPTDA*) (citing Unif. Probate Code article VI, part 3 Uniform TOD Security Registration Act), available at: https://www.uniformlaws.org/HigherLogic/System/DownloadDocumentFile.ashx?DocumentFileKey=d61e6b8f-7e1b-65d1-8e97-6247f35b0150&forceDialog=0.

for themselves as husband and wife." According to the defendants, what Lillie and Charley Smith were trying to do was retain all the interest in the property for their entire lives and then, at their deaths, have whatever remained of the property transfer to the children without going through probate. By definition, that is a transfer-on-death deed.

As described by the Uniform Law Commission[13] (ULC) in the Uniform Real Property Transfer on Death Act of 2009:

> A small but growing number of jurisdictions have implemented the principle of [Uniform Probate Code] Section 6-101 by enacting statutes providing an asset-specific mechanism for the nonprobate transfer of land. This is done by permitting owners of interests in real property to execute and record a transfer on death (TOD) deed. By this deed, the owner identifies the beneficiary or beneficiaries who will succeed to the property at the owner's death.

*URPTDA*, prefatory note (emphasis added).[14] Thirteen states had enacted statutes authorizing transfer-on-death deeds by 2009, when the ULC drafted the

---

[13] The Uniform Law Commission, also known as the National Conference of Commissioners on Uniform State Laws, is made up of lawyer-members who are practicing lawyers, judges, legislators and legislative staff and law professors, who have been appointed by state governments as well as the District of Columbia, Puerto Rico and the U.S. Virgin Islands to research, draft and promote enactment of uniform state laws in areas of state law where uniformity is desirable and practical. The Nat'l Conf. of Comm'rs on Unif. State Laws, *Overview*, https://www.uniformlaws.org/aboutulc/overview (last visited May 6, 2021).

[14] Transfers of property can occur during the owner's life, in which case they are termed inter vivos or non-testamentary, and they are subject to certain rules requiring intent and delivery. Transfers of property that occur at death are termed testamentary and are subject to different rules, usually requiring transfer according to a validly executed will or the laws of intestate succession. . . . The [URPTDA] has a contradiction built in when it provides that property rights do not transfer until death in Section 5, which would make it seem testamentary, while in Section 7, the statute declares that the TOD deed is non-testamentary.

Uniform Real Property Transfer on Death Act. *Id.* And seventeen states plus the District of Columbia and the U.S. Virgin Islands have done so since. The Nat'l Conf. of Comm'rs on Unif. State Laws, *Real Property Transfer on Death Act*, https://www.uniformlaws.org/committees/communityhome?communitykey=a4be2 b9b-5129-448a-a761-a5503b37d884&tab=groupdetails (last visited Feb. 12, 2021). But Iowa is not one of those states.[15] *See id.* In fact, the Uniform Real Property Transfer on Death Act has been introduced in the Iowa legislature at least three times without being adopted. *See* Iowa Sen. File 2117, 86th Gen. Assembly, Reg. Sess., (Feb. 8, 2016), https://www.legis.iowa.gov/legislation/ BillBook?ga=86&ba=SF2117; Iowa Sen. File 393, 87th Gen. Assembly, Reg. Sess. (Mar. 1, 2017), https://www.legis.iowa.gov/legislation/BillBook?ga=87&ba= SF393; Iowa Sen. File 2030, 88th Gen. Assembly, Reg. Sess., (Jan. 16, 2020), https://www.legis.iowa.gov/legislation/BillBook?ga=88&ba=SF2030.

The defendants recognize transfer-on-death deeds have not been statutorily adopted in Iowa. And while they seem to suggest we should adopt the use of such deeds now, they cite no authority to suggest our intermediate appellate court has that power. *See In re C.L.C. Jr.*, 798 N.W.2d 329, 335 n.1 (Iowa Ct. App. 2011) (recognizing that even if a party makes a persuasive argument, "as an

---

Danaya C. Wright & Stephanie L. Emrick, *Tearing Down the Wall: How Transfer-on-Death Real-Estate Deeds Challenge the Inter Vivos/testamentary Divide*, 78 Md. L. Rev. 511, 512 n.3 (2019) (citing *URPTDA* §§ 5, 7).

[15] "Although Iowa does recognize the concept of transferring property upon death for securities, 'Iowa does not allow real estate to be transferred with [revocable life estate] deeds;' therefore, Iowa has generally refrained from adopting the uniform act and has not recognized the deed at the common law." Brody Swanson, Note, *Allowing Farmers to "Take Back" What's Theirs: Adoption of the Revocable Life Estate Deed*, 21 Drake J. Agric. L. 409, 414–15 (2016).

intermediate appellate court we must follow the precedents of our supreme court");
*see also State v. Wahlert*, 379 N.W.2d 10, 14 (Iowa 1985) (considering "public policy concerns" and recognizing "the need for judicial restraint and deference to the legislature" because "the legislature has the expertise to" address them). And even if we considered recognizing this deed format, without legislative guidance or structure, we open our citizens to "uncertainties that lead to significant legal consequences." Stephanie Emrick, Note, *Transfer on Death Deeds: It Is Time to Establish the Rules of the Game*, 70 Fla. L. Rev. 469, 494 (2018).

We agree with the district court that the 1974 deed executed by Lillie and Charley Smith was a transfer-on-death deed, which was not authorized in Iowa at the time and which we do not sanction now. The question is how to handle the use of the unauthorized deed. The district court's remedy was to seemingly disregard the language it deemed impermissible and simply give effect to the rest, concluding the deed was valid and Charley and Lillie retained a life estate with limited rights to the land. There is some support for that ruling in the context of a testamentary situation. *See Tague v. Tague*, 85 N.W.2d 22, 25–26 (Iowa 1957) (holding that where language in a will granting a life estate to the wife conflicted with language giving an unlimited right of disposal, the later language could be construed as a gift of an estate in fee, but considering the will as a whole, the subsequent limitation reduced the gift to a life estate in the property with power to sell subject to the remainderman interest). But we disagree with the remedy provided by the district court. First, it ignores the intention of Charley and Lillie; the face of the deed clearly states they meant to retain a joint tenancy with right of survivorship. *See Yeager v. Farnsworth*, 145 N.W. 87, 88 (Iowa 1914) ("We must

look to the instrument itself for the intent of the grantor, and the nature of the estate granted."). Second, the district court's remedy accomplishes what the legislature has not approved.

We recognize the stated intention of Lillie and Charley—to both convey the family farm to their children in an inter vivos conveyance while keeping all rights and interests in the property for themselves during their lifetimes—is at odds with what one can do with a deed under Iowa law. Generally a deed duly executed and recorded raises a presumption of delivery. *See Jeppesen v. Jeppesen*, 88 N.W.2d 633, 637 (Iowa 1958). But when the grantors do not surrender dominion over the property and the deed is not drawn to create a life estate, such delivery will not pass title. *Id.* at 638*, see also Robinson v. Loyd*, 109 N.W.2d 619, 622 (Iowa 1961). Here, as in *Robinson*, the 1974 deed is cogent evidence that there was no delivery and no intent to convey the property to the grantees because Charley and Lillie retained their rights to joint survivorship. "The primary rule of construction [concerning a deed] is that the real intention of the parties, particularly that of the grantor, is to be sought and carried out whenever possible or when not contrary to, or violative of, settled principles of law or statutory prohibitions." 23 Am. Jur. 2d *Deeds* § 194 (Feb. 2021 Update) (citations omitted). We find language in the 1974 deed to be unable to be harmonized, and, therefore, its terms are repugnant. A repugnancy is "[a]n inconsistency or contradiction between two or more parts of a legal instrument." *Repugnancy, Black's Law Dictionary* (11th ed. 2019). The doctrine of repugnancy makes the deed void. "It has long been the rule of this state that a restraint on alienation whether by deed or will is unlawful and void." *In re Est. of Cawiezell v. Coronelli*, 958 N.W.2d 842, 845 (Iowa 2021) (citing *Crecelius*

*v. Smith*, 125 N.W.2d 786, 788–89 (Iowa 1964) (finding a provision of a deed void for repugnancy)); *see Dolan v. Newberry*, 215 N.W. 599, 601 (Iowa 1927) (finding where the deed conveyed an interest in fee, any subsequent language limiting the interest would be disregarded as repugnant); see also Emrick, 70 Fla. L. Rev. at 481 ("Should a transfer on death deed fail to operate as a matter of law, the probate system serves as a standby to distribute the decedent's property."); 2 Patton and Palomar on Land Titles § 333 *Transfer on Death Deeds/Beneficiary Deeds* (3d ed. Nov. 2020 update) ("Deeds containing language indicating that the grantor did not intend to transfer title to the grantee until the grantor's death are void, because they attempt to perform the function of a will without complying with the statute of wills." (citation omitted)).

"Every conveyance of real estate passes all the interest of the grantor[s] therein, unless a contrary intent can be reasonably inferred from the terms used." Iowa Code § 557.3 (2018).  And from the language of the 1974 warranty deed we understand what Charley and Lillie intended.

> The primary rule of construction is that the real intention of the parties, particularly that of the grantor, is to be sought and carried out whenever possible, when contrary to no settled rule of property which specifically ingrafts a particular meaning upon certain language, or *when not contrary to, or violative of, settled principles of law or statutory prohibitions*.

*In re Fleck's Est.*, 154 N.W.2d 865, 867 (1967) (emphasis added).  And in the 1974 deed Lillie and Charley Smith specifically confirmed the instrument must operate "in accordance with Supreme Court decisions of the State of Iowa."  What the couple did not know was that vehicle (their "warranty deed") was not the appropriate tool under Iowa law.  Charley and Lillie wanted to retain control as

tenants with rights of joint survivorship but provide the land at their death equally to their children and avoid probate. But because the transfer-on-death deed is not condoned under Iowa law, the deeds as drafted are unenforceable. Charley and Lillie retained their status of joint tenants with full rights of survivorship.

The 2006 and 2010 deeds were also attempted transfer-on-death deeds. In those deeds, Lillie attempted to retain all the same rights as she and Charley had in the 1974 deed; the language as to the rights is identical and the defendants stipulated at trial that the language in the 2006 deed was copied from the 1974 deed. Carolyn Stanley testified her mother "wanted the same deed drawn just like what she and Dad had executed in the '70s." Because the 2006 and 2010 deeds were also transfer-on death deeds, they are also void. Since a void deed is unenforceable, and Lillie Smith died intestate, the property must pass through the estate of Lillie Smith. *See* Iowa Code §§ 633.210; 633.219.

Alternatively, the defendants appear to argue that with the 1974 deed, Charley and Lillie Smith could properly create or retain a life estate and retain all "powers of disposal."[16] Although they do not use this term, we understand the defendants to be advocating for an enhanced-life-estate deed. They point to Iowa case law where the "power of disposal" has been recognized before. However, as the plaintiffs respond and the defendants concede, our supreme court has only recognized the right to retain the power of disposal in testamentary rather than

---

[16] "A power of disposal is a power given a life tenant to sell or dispose of the corpus and use the proceeds whenever income is insufficient to meet some standard set by the donor, such as support and maintenance, or comfort, or enjoyment and satisfaction." Edward S. Mraz, *Estate Planning—Life Estate with Power of Disposal*, 32 Notre Dame L. Rev. 141, 141 (1956).

inter vivos conveyances. In other words, those cases involve a property conveyance by will rather than a deed. *See, e.g.*, *Steiff v. Seibert*, 105 N.W.2 328, 329 (Iowa 1905) (ruling the husband's will conferred "a life estate only upon the widow with an added power of disposal . . . and confer[red] upon the devisees named therein a vested remainder in so much of the property as the widow may not have disposed of during her lifetime"). And again, Iowa is not one of the few states that have recognized enhanced-life-estate deeds. *See* American Council on Aging, *How Lady Bird Deeds Protect a Medicaid Recipient's Home for Their Loved Ones*, https://www.medicaidplanningassistance.org/lady-bird-deeds/ (July 13, 2020) ("At the time of this writing, the following states allow lady bird [or enhanced-life-estate] deeds: Florida, Michigan, Texas, Vermont, and West Virginia."). This alternative argument does not save the 1974, 2006, or 2010 deed from being void.

**IV. Conclusion.**

While we agree with the district court that the 1974, 2006, and 2010 deeds were attempted transfer-on-death deeds, because such a deed is not authorized under Iowa law, we find the deeds void. Because void deeds are unenforceable and Lillie Smith died intestate, the property must pass through the estate of Lillie Smith.

**AFFIRMED IN PART AND REVERSED IN PART.**