No. 34,003

Ardell Staats, *Appellee*, v. W. F. Staats et al., *Appellants*.

(84 P. 2d 842)

Opinion filed December 10, 1938.

*J. N. Tincher*, of Hutchinson, *Riley W. MacGregor, Leaford F. Cushenbery, Herbert Hobble, Jr.*, all of Medicine Lodge, and *Alfred Williams*, of Pratt, for the appellants.

*William B. Hess*, of Pratt, and *Samuel Griffin*, of Medicine Lodge, for the appellee.

The opinion of the court was delivered by

Dawson, C. J.: This was an action to set aside a deed which purported to convey certain lands to the defendants. The deed was recorded some thirteen years after its execution. Whether there had been a valid delivery of it was the vital question in this lawsuit.

On the issues joined, the trial court held that there had been no delivery, and judgment was accordingly awarded to plaintiff.

Defendants appeal, urging several errors, the most important of which was the overruling of their demurrer to plaintiff's evidence. A consideration of this point will require a statement of the case at some length.

In 1921 the late Abram Staats, of Pratt county, and this plaintiff were married. He had thirteen children by a former wife. She had three children by a former husband. On September 26, 1923, Abram and wife executed a deed of general warranty conveying to the thirteen sons and daughters of Abram two half sections of land. During the succeeding years, until the death of Abram on October 5, 1936, Abram and wife continued to exercise the usual prerogatives of ownership of the land in controversy. From time to time they executed and recorded various instruments affecting its title, such as mortgages, oil and gas leases, and assignments of oil lease rentals. Abram collected the rents and profits of the land. One of his sons occupied the land as tenant for several years and delivered to his father the landlord's share of the crops, including the wheat crop for 1936.

Abram conducted a mercantile establishment, in which there was a safe; and until about a year before his death, the deed, which had not been delivered before 1935, remained in Abram's safe. In June, 1936, Abram's health began to fail. About that time one of his sons, Lature Staats, assisted in conducting his father's business and had access to his father's safe. He filed the deed for record on August 18, 1936, some six weeks before Abram died.

Plaintiff's testimony explaining the execution of the deed by Abram and herself was that in 1923 he was associated in some capacity with a bank which was in financial difficulties that might make it expedient for her husband to use the deed if the bank's troubles should make it necessary to do so, but not for any other purpose. Other evidence tended to show that the bank's troubles were surmounted, in part, by a note and mortgage executed by plaintiff and husband (amount not stated; inferably it was for 40/172 of $25,000; brief of appellee says $5,000), and that such mortgage covered the land in controversy.

On the evidence summarized as above, can it be said that it was insufficient to withstand defendants' demurrer thereto? The record-

ing of a deed would ordinarily imply a delivery of it. (*Pentico v. Hays,* 75 Kan. 76, 80, 88 Pac. 738; 18 C. J. 419.) In *Balin v. Osoba,* 76 Kan. 234, 237, 91 Pac. 57, it was said:

"It is well settled that delivery is largely a matter of intention; that a manual delivery is not necessary; that although registration may not itself constitute delivery, it is a circumstance from which delivery may be inferred, and will be inferred in the absence of some sufficient reason to the contrary. These propositions are elementary, and are supported by the texts and citations to be found in volume 13 of the Cyclopedia of Law and Procedure, at pages 561, 562, 567 and 569, and in volume 9 of the American and English Encyclopaedia of Law, at pages 153, 154 and 159."

However, we think the evidence for plaintiff, including the potent significance that should be given to the many years' exercise of the prerogatives of ownership by Abram after the deed was executed, down almost to the end of his life, and including the testimony of plaintiff (to which the trial court apparently gave full credence) touching the purpose for which the deed was executed—all these probative details made a prima facie case for plaintiff that no regular, valid delivery of the deed had been made to Lature Staats or to any of the grantees during the lifetime of Abram. No error is made to appear in the trial court's ruling on the demurrer.

Nor was plaintiff's evidence materially weakened by the testimony adduced for defendants. The competent evidence in their behalf, other than the fact of the deed being recorded six or seven weeks before Abram's death, was very scant; and it was, moreover, self-serving; and, of course, the trial court was not bound to give it credence. One of the defendants, Floyd Staats, undertook to establish the fact of his father's voluntary delivery of the deed to Lature Staats. His testimony and ruling of the court thereon reads:

"I was in my father's store *in August,* 1935, when my brother and father had a conversation relative to the deed in question.

"Q. Did you hear that conversation? A. I heard it.

"Q. You may state what it was. A. He handed my brother the deed . . [Objection sustained.] . . . .

"My father handed him the deed, told him the farm belonged to the children and told him to put the deed on record. My brother took the deed. That happened in *October, 1935.* I never saw the deed after that time."

Cross-examination:

"Q. Well, what did you say to your father about this deed? A. Well, *I don't remember that I said very much about it,* any more than I was there and saw him give it to my brother and of course—

"Q. Did you or didn't you? You said a while ago you did but you didn't remember what you said, now you don't know whether you did or not; what is the fact? A. Well, *the fact is that he told us—*

"Q. Well, wait a minute. I am asking you what you and your father and your brother said. I want to know what you said, or do you remember what you said? A. Well, *I said to who do you mean?*

. . . . . . . . . . . . . .

"Q. Well, now, what is it that you said to your father; did you say anything to your father or didn't you? A. *I did* when he mentioned the fact that it was agreed."

Redirect examination:

"Q. Was he talking to you? A. *I don't think he was talking to me any more than my brother.*

. . . . . . . . . . . . . .

"By the Court: Was he talking to him or talking to both of you? That is what I want to know. A. Well, *I don't know who he was talking to. Both of us* was there. He was talking in my presence.

"[Counsel for plaintiff]: We renew our objection, your honor.

"By the Court: Objection sustained. Testimony stricken out." [Italics ours.]

We see no error in this ruling. Moreover, if the evidence had been competent, it would not have been easy to give it credence. At the beginning of his testimony Floyd Staats testified that the delivery of the deed occurred in August, 1935; and this, too, was the substance of the excluded testimony of Lature himself. But before Floyd concluded, he testified thus:

"Q. Do you remember when that was? A. It was October, 1935.

"Q. October, 1935? A. October, 1935."

The question when the alleged delivery was made, if at all, was more important than it might seem at first impression. Defendants' answer pleaded that it had been delivered in October, 1935. Floyd Staats first testified it had been delivered in August, 1935, and later testified it was in October, 1935. Lature Staats attempted to testify that his father gave it to him in August, 1935, but when his veracity was attempted to be tested on cross-examination he evaded questions which would have shown whether he was in Kansas or California at either of the dates, August or October, 1935, when the claimed delivery had been made.

Another of defendants testified that she had a conversation with plaintiff prior to Abram's death, in which plaintiff "spoke of the farm as belonging to us children." Some other testimony was adduced in defendants' behalf, but it would serve no purpose to re-

hearse it. Its probative weight was for the trial court to consider, and no error can be discerned in the small credence accorded it.

Defendants contend that plaintiff was estopped to deny the validity of the deed and its delivery. The suggested estoppel is apparently based on the fact that the deed was recorded on August 21, 1936, and she did not bring suit to set it aside until February 27, 1937, six months and six days thereafter. As there were no circumstances shown which would require unusual speed on her part to avoid an estoppel, we think this contention is not good.

Touching the exclusion of the testimony of Floyd Staats, we think the ruling of the trial court was correct. (Civ. Code, § 320, G. S. 1935, 60-2804.) Before his examination was completed it was perfectly clear that he was a party to the alleged conversation with the father when the alleged delivery of the deed to Lature Staats is said to have taken place. Moreover, he was as much concerned as his brother in the transaction, if it ever occurred.

Under the circumstances of this case—Lature's access to the safe where the deed was kept, his father's failing health, the complete dearth of competent evidence that the father did deliver the deed to Lature, the fact that plaintiff merely joined her husband in the execution of the deed to meet some emergency which never did arise —we cannot say that the trial court erred in declining to consider the fact that the deed was filed for record as sufficient proof of its delivery. (*Mundell v. Franse,* 143 Kan. 139, 53 P. 2d 811; 18 C. J. 440; 8 R. C. L. 1005; 4 R. C. L. Perm. Supp. 2370.) See, also, *Neel v. Catherine Neel et al.,* 65 Kan. 858, 69 Pac. 162; and *Burke v. Burke et al.,* 141 S. C. 1, 139 S. E. 209, 56 A. L. R. 729. The cases of *Conner v. Cole,* 112 Kan. 517, 211 Pac. 615, and *Turner v. Close,* 125 Kan. 485, 264 Pac. 1047, are not closely analogous, because in each of them the grantor himself had the deed recorded. Furthermore, neither of them contradicts the rule applied in the case at bar.

Counsel for appellants stress the rule of law that when a wife joins her husband in the execution of a deed and permits him to have possession of it she thereby consents to its delivery by her husband. That is the ordinary rule (18 C. J. 212); but see *Braly v. McKenna,* 148 Kan. 547, 83 P. 2d 631. Here, however, a prima facie case of nondelivery was made by plaintiff, with very little competent or convincing evidence to withstand it—certainly none of sufficient potency to warrant this court's interference with the judgment of the trial court.

That judgment is therefore affirmed.