ROBERT W. AVERY and ROBERT W. AVERY, executor of estate of Alma L. Avery, deceased, appellee, v. MARJORIE HEFFEL-FINGER LILLIE et al., appellants.

No. 52311.

(Reported in 148 N.W.2d 474)

11

FEBRUARY 7, 1967.

Alex M. Miller, of Des Moines, and Miller & Reiter, of Knoxville, for appellants.

E. Raymond Mick, of Knoxville, for appellee.

BECKER, J.—Action to set aside deed and to quiet title to certain real estate in plaintiff. Counterclaim by defendant to quiet title in her to the same real estate. Judgment for plaintiff. Defendant appeals.

Alma L. Avery died May 11, 1964. Her will, duly admitted to probate without contest was dated October 19, 1959. On

12

July 15, 1964, Marjorie Heffelfinger Lillie, one of decedent's daughters, filed a deed which conveyed decedent's homestead to Marjorie. This deed was dated May 19, 1962. The will specifically devised this real estate to plaintiff Robert W. Avery. The devise would, of course, be defeated if the deed were valid, effective and legally delivered. Thus the issue was formed.

The action was tried in equity. We review the case de novo and give weight to the trial court's findings but are not bound by them. Rule 344(f)(7), Rules of Civil Procedure. The court set aside the deed and quieted title in plaintiff. The review of issues, findings of fact and conclusions of law filed by the trial court were carefully considered and fully documented. The court found that a confidential relationship existed · between decedent and defendant, that the deed in question was executed by decedent while under the undue influence of defendant, that decedent was incompetent at the time the deed was executed, and that there was no showing that the deed was ever manually delivered. The court considered the question of fraud at length but did not specifically find that fraud had been shown.

■ Defendant relies on seven propositions for reversal. Two of the propositions grow out of allegations by plaintiff which were unproved or unnecessary to the decision and will not be considered at length. Plaintiff alleged that decedent did not execute the deed. The evidence is undisputed that she did execute the deed. Plaintiff also alleged that the deed was procured without consideration. Defendant admits she paid no money for the deed. It would not be necessary that she do so. The court gave no weight to this matter, nor do we. Under the record here consideration would be unnecessary if decedent intended to make a gift, advancement or a family settlement. This matter was never reached and is unnecessary to our decision.

The remaining propositions are that the facts fail to establish by clear, satisfactory and convincing evidence that (1) decedent was incompetent (2) there was no delivery of the deed (3) there was force and undue influence (4) there was fraud and deceit and (5) there was a confidential relationship.

Decedent Alma Avery was survived by her son, Robert,

plaintiff here, and two daughters, Marjorie, defendant here, and Fern Ver Steeg, who did not testify. Decedent was 87 at her death in 1964. She was thus 82 when she made her will in 1959 and 85 at the time of the execution of the deed in question.

Mrs. Avery apparently lived with various members of the family, and on occasion in the summer stayed at her homestead alone for short periods. She was possessed of considerable real estate and U. S. Government bonds.

Carroll Johnson of Knoxville had done decedent's legal work since prior to 1956, drew her will and had it in his office at all times material to this action. Mr. Johnson withdrew as attorney in this case immediately prior to trial and was one of the plaintiff's principal witnesses. He told of having prepared Mrs. Avery's will and of several later conferences concerning possible changes in the will. In each instance, occurring in 1960, 1961 and 1962, Mrs. Avery was accompanied by one or the other of her children. The third instance she was brought by defendant. Mr. Johnson asked Mrs. Lillie to step out of the room so that he could talk to Mrs. Avery alone. After discussing her will alone with her lawyer testatrix did not change her will but let it remain as drawn.

Mr. Johnson also told of other legal business that he handled for decedent. Principal among these incidents was an occurrence in October of 1962. Mrs. Avery had been visiting a Mrs. Marie DuPree, her deceased son's former wife. Mrs. DuPree came to Knoxville with decedent and the two of them drew some $7247 from an account of decedent in the Iowa State Savings Bank in Knoxville taking payment by cashier's check. This money was used to buy U. S. Government bonds in Illinois, $2000 in Mrs. DuPree's name alone and the rest in Mrs. Avery's name with Mrs. DuPree as co-owner. The children found out about this and requested Mr. Johnson to get these assets back. He contacted Mrs. DuPree in Illinois. Apparently he effected the return of all the funds except the $2000. All of the children then agreed that their mother needed a guardian. The guardianship was delayed because although the mother wanted her son, Robert, as guardian, the sisters did not want their

brother to be appointed. Subsequently a voluntary guardianship with Robert as guardian was opened in May 1963.

When the DuPree matter was uncovered, defendant was concerned that her mother may have executed other instruments dispositive of her assets to Mrs. DuPree. At defendant's suggestion a statement was prepared for Mrs. Avery disavowing any such action and reaffirming her will. At defendant's suggestion this disavowal was limited to transactions with Mrs. DuPree and was not general in nature. Thus it did not cover the deed to defendant which had been in existence for many months unbeknown to Mrs. Avery's attorney or the other children.

Sometime in 1962 or 1963 both the signature card and the passbook card for Mrs. Avery's savings account at the Community Trust and Savings Bank in Knoxville had added to it, with Mrs. Avery's consent, the following: "(No withdrawal to be made except when R. W. Avery and Marjorie Heffelfinger are with Mrs. Avery.)"

The circumstances surrounding the execution of the deed are related by Virginia Blythe. Miss Blythe was secretary for Bert Bandstra, a Knoxville attorney, during the year 1962. In May 1962 defendant came into the office to see if she, Virginia Blythe, was in. Defendant left and returned with her mother. A deed was produced and at defendant's direction Miss Blythe typed a new deed putting Alma Avery as grantor and defendant as grantee. Neither defendant nor Mrs. Avery said anything about the reason for the deed or about consideration. The fair import of this witness' testimony is that defendant managed the whole affair and Mrs. Avery did nothing but sign her name. Miss Blythe notarized the deed and handed it back to one of the women. She does not remember which one.

The deed was not again produced until filed some days after testatrix's death. Meantime plaintiff asked defendant about the deed and states that she told him that it was just her mother's imagination that she would not do such a thing. Defendant agrees that there was a conversation but disputes plaintiff's version. She states that plaintiff made a statement of fact about the deed but did not ask a question. That she did not

deny having the deed. "I didn't say I did; I didn't say I didn't." Asked if she ever said that Mother would not do a thing like that, defendant answered: "No, I didn't make any statement to that effect. Sometimes no answer is best."

After Mrs. Avery died the children all met at Mr. Johnson's office to go over the will. The specific bequest of the homestead property was discussed, a county plat was obtained and the property was located. The deed was not mentioned. Shortly thereafter the deed was filed.

In 1962, '63 and '64, plaintiff was renting the forty acres in question from his mother. She was receiving the income from the property and claiming homestead exemption on it. She also paid the taxes directly, or through her guardian on the property.

Much more evidence was produced on both sides. In the interest of economy of space we repeat no more at this point. We have studied the record carefully and find that the trial court should be affirmed.

I. The question of delivery is determinative of this lawsuit. Plaintiff relies heavily on Jeppesen v. Jeppesen, 249 Iowa 702, 88 N.W.2d 633. Defendant feels that case is factually distinguishable. There are factual differences between the Jeppesen case and this case. This is true of all of the cases cited. Nonetheless, we think the legal principles found in Jeppesen apply here.

A duly executed and recorded deed ordinarily raises a rebuttable presumption of delivery with the present intent of passing immediate title, and the right of possession. This is true even though the recording takes place after the grantor's death. But the presumption is weaker where the deed is filed after the grantor's lifetime. Robinson v. Loyd, 252 Iowa 1086, 109 N.W.2d 619; Klosterboer v. Engelkes, 255 Iowa 1076, 125 N.W.2d 115.

Ordinarily, the burden of proving nondelivery is on the party so alleging and the evidence must be clear, satisfactory and convincing. Klein v. Klein, 239 Iowa 40, 29 N.W.2d 163.

But manual delivery is not conclusive. For valid delivery the grantor must intend the deed to be presently effec-

tive as a transfer without any reservation of control. The intent of the grantor is controlling in the matter of delivery. Evidence of intent may be produced by showing grantor's acts or words or both. Klosterboer v. Engelkes, supra, citing Jeppesen v. Jeppesen, supra.

Where a deed absolute on its face without reservation is delivered to the grantee with intention that it shall become operative only on the death of the grantor and the survival of the grantee, such delivery will not pass title, 23 Am. Jur.2d, Deeds, section 91, page 141, citing Jeppesen v. Jeppesen, supra, as one of several authorities.

In Klosterboer v. Engelkes, supra, we recognized that the rule is different where a third-party agent is employed. "We have frequently held an effective delivery may be made by placing the deed with a third person, without reserving the right to recall it, with instructions to deliver to the grantee upon the grantor's death. The effect of thus placing the instrument with the third person is to reserve a life estate to the grantor with title passing immediately to the grantee, but the latter's right to possession is postponed until the grantor's death. Kane v. Campisano, supra, and citations at page 753 of 255 Iowa, page 177 of 124 N.W.2d; Oehler v. Hoffman, 253 Iowa 631, 638, 113 N.W.2d 254, 258."

This gives support to the statement in Jeppesen, loc. cit. 249 Iowa at 710:

"Since it appears without dispute the grantor intended to retain a life estate the only way he could effectively do so, under this deed, was to withhold delivery or transfer it to a third party with directions to deliver it to the grantees after his death. There is no evidence he ever contemplated delivery through a third party. We think the reasonable conclusion is that decedent did not intend the transfer of title to take effect during his life.

"That the grantor's continued possession and control of the property and exercise of acts of ownership over it strongly negative delivery see [cases cited]."

Turning then to a short discussion of the record. The evidence of both sides indicates that the 85-year-old grantor

still went back from time to time to visit the house, check on the furniture, see if everything was all right and in summer to stay, if well enough, on her homestead; the land was rented to and worked by her son; she, or her estate, received the income therefrom to the time of her death, homestead exemption during all material times was claimed by or for her, grantor said nothing to indicate that she had transferred present title to grantee or had given up her right to possession.

The grantee made no claim of ownership during 1962, 1963 or 1964. She did not demand the crop rent, interest in the soil bank funds, show interest in the improvements or cost of upkeep, pay or offer to pay the taxes, or, in short, do anything indicative of or consistent with claim of ownership.

We have said: " 'The deeds in themselves are cogent evidence that there was no delivery and no intention on plaintiff's part to deliver them. The deeds were absolute conveyances without any reservations for her benefit. An effective delivery of the deeds would have passed title from her to her home and the income-producing farms. A transaction of that kind would have been contrary to common experience and far out of the usual and ordinary. Its unwisdom speaks most convincingly of the unlikelihood that it was ever effected or contemplated.' Thompson v. Thompson, supra, 240 Iowa 1162, 1171, 39 N.W.2d 132, 137, 138." Robinson v. Loyd, supra.

Defendant herself was asked on cross-examination:

"Q. I will ask you this question now again, a different question:. Did you tell your brother Robert about what happened on May 19, 1962, at Knoxville about which you have testified? A. Mother told me not to say anything about that transaction."

Later on cross-examination defendant said: "I suppose the taxes were paid in her name. I didn't pay them. I knew my mother applied for and received homestead exemption for the year '62, '63 and '64. *I wasn't to get possession until she was gone, that was a mutual understanding.*" (Emphasis supplied.)

While the witness would ordinarily be incompetent to testify to the above matters under our dead man statute, Code, 1966, section 622.4, neither party may complain as to this testimony. Defendant opened the matter by her reply to the

18

first question set out. The reply was not responsive and was essentially a volunteered statement. There was no motion to strike. The material was new as to this witness. It had not been covered on direct examination. Plaintiff elected to pursue the matter. See Mollison v. Rittgers, 140 Iowa 365, 118 N.W. 512, 29 L. R. A., N. S., 1179.

We have reviewed the cases cited by defendant. None enunciates principles of law at variance with what has been said here. Each presents a different factual situation. We give full weight to the presumption that the deed was delivered. We hold that this presumption was successfully rebutted and the evidence is clear and convincing that the delivery was conditional. Thus it was ineffective to pass title under the factual situation here presented.

Under the Iowa authorities the evidence re delivery is determinative of this case. We need not pass on the errors assigned relating to competency, force and undue influence, fraud and deceit, and confidential relationship for the reason that even though defendant were to prevail on all of those issues, she must fail because plaintiff has overcome the presumption of legally effective delivery of the deed.—Affirmed.

All JUSTICES concur.