Mark C. RAUSCH, Appellant,

v.

Michelle DEVINE, Appellee.

No. S–10660.

Supreme Court of Alaska.

Dec. 5, 2003.

---

Allison E. Mendel and Sherry Clark, Mendel & Associates, Anchorage, for Appellant.

John R. Strachan, Law Office of John R. Strachan, Anchorage, and James D. Babb, Jr., Law Office of James D. Babb, Jr., Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

Mark Rausch appeals the trial court's decision that he validly delivered two quitclaim deeds to Michelle Devine and the court's refusal to impose resulting or constructive trusts on the properties in his favor. Because Rausch failed to rebut a presumption of valid delivery by clear and convincing evidence, and because resulting or constructive trusts are inappropriate in cases of gratuitous transfers, we affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

### A. Facts

Mark Rausch and Michelle Devine met in Iowa in 1988 and began a romantic relationship in 1989. They discussed marriage and in early 1990 went to Belize for a marriage ceremony that the parties agree was not legally effective, although afterwards they did on occasion hold themselves out as married. They lived on Rausch's farm in Iowa from February to March 1990, and then moved to Rausch's house in Anchorage. Their daughter Sydney was born in April 1991. They lived together until 2000. They used a fairly traditional living arrangement in which Devine cared for Sydney and the house, held some minor jobs, and took care of all household paperwork and bills. Rausch covered almost all of their living expenses by occasionally working as a lawyer and hunting guide, by recovering lost airplanes, by trading his labor, and by using $140,000 in cash savings that he kept hidden on his properties in Iowa and Alaska.

The parties agree that on May 7, 1990 Rausch drafted and signed an unconditional quitclaim deed in favor of Devine for his farm in South English, Iowa, and took it to a lawyer friend to have it acknowledged. The parties stipulate that Rausch was an attorney and was competent to draft the deed so as to include any terms he wished. They also agree that at the very least Rausch showed Devine the Iowa deed after she became pregnant with Sydney, and that Devine recorded the

deed in May 1991 while visiting Iowa with Sydney after the birth. On January 13, 1993 Rausch asked different lawyer friends to draft and acknowledge another quitclaim deed to Devine, this time for the Anchorage property, and this deed was recorded by Rausch's friend in February 1993. Thereafter, Devine continued to act primarily as a homemaker and Rausch continued to pay for the mortgage and direct the upkeep on both properties. He also began the construction of a house on the Iowa property in 1997.

At some point in early 1993, Devine moved out of Rausch's bedroom and their intimate relationship ceased, but in most practical respects their relationship stayed the same, apparently because Devine hoped the relationship would improve and Rausch wanted access to Sydney. On a few occasions the parties discussed the possibility that Rausch would buy back the deeds so that Devine could buy a different house in Anchorage, but this never materialized. The parties separated in early 2000 when Devine filed her complaint in the case below.

### B. Proceedings

In February 2000 Devine filed suit in superior court in Anchorage asking for an order that Rausch vacate the house in Anchorage, an order distributing their property other than the Iowa and Anchorage lands, sole legal custody of Sydney, and child support. In June 2000, Rausch counterclaimed to quiet title to the Iowa and Anchorage lands, or in the alternative for the imposition of a resulting or constructive trust on the lands, breach of contract, and joint legal custody. Trial was bifurcated by Superior Court Judge Eric T. Sanders between property and child custody/support issues, and trial on the property issue was held on March 12–13 and April 4, 2001. At trial, Devine contended that Rausch had given her both properties and paid for their mortgages as a gift because he was generous and because he wanted to assuage her concerns that their unmarried status left her in a financially precarious

position. Rausch contended that he had never intended to transfer title to the properties to Devine. Instead, he testified that he executed the deed to the Iowa property only intending for her to take title if he died and that he executed the deed to the Anchorage property only as reassurance that he would not evict her from the house until Sydney's majority.

Judge Sanders ruled that the recording of the deeds created a presumption of valid delivery that was rebuttable by clear and convincing evidence. He noted that Rausch's continued payments for the properties were persuasive evidence against delivery, but nonetheless ruled that the presumption had not been overcome because Rausch was not a credible witness, Rausch's explanation for why he executed the quitclaim deeds did not correspond with what Rausch as a lawyer would understand the purpose of a quitclaim deed to be, Rausch's financial habits were generally "unconventional," and Rausch had taken no action for six years upon allegedly learning that Devine was the title holder to both properties. Judge Sanders rejected the resulting trust argument for two reasons: first, because the Restatement (Second) of Trusts section 440[1] states that resulting trusts are inferred when a payor furnishes a purchase price on behalf of a third party, which had not been the case here, and second, because comments to the Restatement section 441 also provide that no inference of a trust arises when a transfer appears to be intended as a gift. Judge Sanders also rejected the constructive trust theory, noting that a constructive trust is imposed only where the title holder has acquired the property through unjust, unconscionable, or unlawful means and would therefore be unjustly enriched by keeping it.[2] He found that while the gift "undoubtedly" enriched Devine, she had performed most of the services of a spouse during the ten years of their relationship and he implied that this did not constitute unjust, unconscionable, or unlawful behavior that unfairly tended to deprive

---

**1.** Restatement (Second) of Trusts § 440 (1959).

**2.** *State Farm Auto. Ins. Co. v. Raymer,* 977 P.2d 706, 712 (Alaska 1999); *McKnight v. Rice, Hoppner, Brown & Brunner,* 678 P.2d 1330, 1335 (Alaska 1984) (quoting George Gleason Bogert & George Taylor Bogert, Trusts and Trustees § 471, at 3 (rev.2d ed.1978)).

Rausch of his property. Finally, Judge Sanders rejected Rausch's express contract theory but awarded Rausch the house that he had built on the Iowa property. Rausch appeals.

## III. STANDARD OF REVIEW

■ The choice of the proper standard of law for resolving property disputes is a question of law that we review *de novo*.[3] The application of law to the facts of the case is reviewed *de novo*.[4] We adopt the rule of law that is most persuasive in light of precedent, reason, and policy.[5] The factual findings of the trial court are reviewed for clear error, a standard that is met if, after a thorough review of the record, we come to a definite and firm conviction that a mistake has been made.[6] The trial court's findings regarding the credibility of witnesses and weighing of the evidence may be reversed only if clearly erroneous.[7] In reviewing the trial court's factual findings, we view the evidence in the light most favorable to the party prevailing in the trial court.[8] We may affirm the trial court's result on any basis supported by the record.[9]

## IV. DISCUSSION

Rausch contends that both pieces of property should be returned to him in full under three theories: (1) that both deeds were invalid for lack of proper delivery, because he never gave Devine the deeds or intended that the quitclaim deeds should transfer title; (2) that a resulting trust should be imposed because the transactions give rise to the inference that Rausch did not intend to benefit Devine; and (3) that a constructive trust should be imposed because Devine will be unjustly enriched if she is allowed to retain properties for which Rausch paid.[10] All of these theories depend on acceptance of Rausch's version of the facts and rejection of Devine's. Evaluation of the credibility of witnesses is a matter for the trial court, and upon review the prevailing party is entitled to have the record viewed in the light most favorable to her. Under these principles, we affirm the factual and legal rulings of the trial court.

### A. Rausch Did Not Present Clear and Convincing Evidence Rebutting the Presumption that the Iowa and Alaska Deeds Were Validly Delivered.

■ The heart of Rausch's case is the contention that the recorded deeds to the Iowa and Alaska properties were invalid because they were never properly delivered to Devine.[11] We reject that contention.

3. *D.M. v. D.A.*, 885 P.2d 94, 96 n. 3 (Alaska 1994).

4. *Wood v. Collins*, 812 P.2d 951, 955 n. 4 (Alaska 1991).

5. *Id.* at 956 n. 5; *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

6. *Klosterman v. Hickel Inv. Co.*, 821 P.2d 118, 121–22 (Alaska 1991).

7. *Parker v. N. Mixing Co.*, 756 P.2d 881, 892 n. 25 (Alaska 1988); Alaska R. Civ. P. 52(a).

8. *Klosterman*, 821 P.2d at 122.

9. *In re A.B.*, 791 P.2d 615, 621 n. 9 (Alaska 1990).

10. At oral argument, Rausch also suggested that the trial court should simply have divided the properties in accordance with the intention of the parties under *Tolan v. Kimball*, 33 P.3d 1152, 1154 (Alaska 2001); *D.M. v. D.A.*, 885 P.2d 94, 97 (Alaska 1994); and *Wood v. Collins*, 812 P.2d 951, 956–57 (Alaska 1991). While these cases do govern property division between unmarried domestic partners, we can find no reference to them in any trial argument or in Rausch's appellate briefing. Accordingly, we hold that this argument has been waived. *D.H. Blattner & Sons, Inc., v. N.M. Rothschild & Sons, Ltd.*, 55 P.3d 37, 54 n. 69 (Alaska 2002) (issues not raised in trial court are waived on appeal except where plain error has occurred); *Bishop v. Clark*, 54 P.3d 804, 815 n. 32 (Alaska 2002) (issues not adequately briefed on appeal are waived).

11. While Devine devotes considerable attention to the issue whether reformation was available, Rausch does not raise the claim that the deeds should have been reformed. Instead, he has steadfastly maintained that "the court in this case was not called upon to interpret a document. The court was required to determine whether the grantor intended the document to be effective. The meaning of the document itself, if it were delivered, was never in dispute." Accordingly, it is not necessary for us to consider reformation.

**1. Both Iowa and Alaska law require delivery of a validly executed deed, and in both states the presumption of valid delivery that arises upon recording can be rebutted by the party disputing delivery through clear and convincing evidence.**

An action to invalidate a deed is an equitable one and can therefore be brought in any court with equity power,[12] but the law of the situs of the property is applied to the validity of the deed itself.[13] In this case there are deeds concerning land in Iowa and in Alaska, and the laws applicable to each are very similar.

In Iowa, a deed duly executed and acknowledged is self-proving as to its execution and delivery when produced by the grantee.[14] "Every conveyance of real estate passes all the interest of the grantor therein, unless a contrary intent can be reasonably inferred from the terms used."[15] The proper transfer of title under a deed must include an actual or symbolic delivery of the deed accompanied by the intention of the grantor to transfer title without any reservation of control.[16] "The intent of the grantor is controlling in the matter of delivery and is to be determined by the grantor's acts or words or both."[17] A duly executed and recorded deed ordinarily raises a rebuttable presumption of delivery with present intent of passing title and possession, although the recording of the deed does not necessarily constitute delivery if the facts and circumstances indicate that the grantor's intention was otherwise.[18] The burden of proving the absence of delivery is on the party alleging the absence of delivery, and the evidence must be clear, satisfactory, and convincing.[19] When a deed absolute on its face is delivered to the grantee with the intention that it become effective only upon the grantor's death, the delivery is wholly ineffective, but if the grantor delivers the deed to a third-party agent without reserving the right to recall it, then title passes immediately to the grantee while reserving a life estate to the grantor.[20] The grantor's continued possession and control of the property strongly suggest the absence of delivery, especially where the grantee does not take possession in any way.[21]

These principles of Iowa law are generally consonant with the American law of delivery of deeds,[22] and Alaska case law has implied that delivery of a deed is part of its valid execution, relying on POWELL ON REAL PROPERTY.[23] Although there appears to be no Alaska case specifically holding that the recording of a deed gives rise to a presumption of valid delivery that is rebuttable by clear and convincing evidence, Chief Justice Rabinowitz has noted that this is hornbook law,[24]

**12.** George Chamberlin, *Cause of Action to Invalidate Deed for Failure of Delivery*, 5 SHEPARD'S CAUSES OF ACTION (SECOND) 471, 539 (1994).

**13.** *Estate of Lampert v. Estate of Lampert*, 896 P.2d 214, 220 (Alaska 1995); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 223 (1971); ROBERT A. LEFLAR, AMERICAN CONFLICTS LAW § 169 (3d ed.1977).

**14.** *Heavner v. Kading*, 209 Iowa 1275, 228 N.W. 313 (Iowa 1929).

**15.** IOWA CODE ANN. § 557.3 (West, WESTLAW through 2002 2d. Ex.Sess.).

**16.** *Orud v. Groth*, 652 N.W.2d 447, 451 (Iowa 2002); *Klosterboer v. Engelkes*, 255 Iowa 1076, 125 N.W.2d 115, 117 (1963).

**17.** *Orud*, 652 N.W.2d at 451; *Klosterboer*, 125 N.W.2d at 117.

**18.** *Orud*, 652 N.W.2d at 451; *Avery v. Lillie*, 260 Iowa 10, 148 N.W.2d 474, 477 (Iowa 1967).

**19.** *Avery*, 148 N.W.2d at 477; *Klosterboer*, 125 N.W.2d at 117.

**20.** *Avery*, 148 N.W.2d at 477–78.

**21.** *Id.* at 478.

**22.** *See* RICHARD R. POWELL ET AL., POWELL ON REAL PROPERTY § 81A.04[2] (Matthew Bender Real Property Law CD–ROM, rel. 101, Dec. 2002); 23 AM.JUR 2d *Deeds* §§ 102–48 (2002).

**23.** *Bennis v. Alexander*, 574 P.2d 450, 451–52 (Alaska 1978).

**24.** In a dissenting opinion in *Lown v. Nichols Plumbing & Heating, Inc.*, 634 P.2d 554, 557 & n. 2 (Alaska 1981) (citing 6A RICHARD POWELL, THE LAW OF REAL PROPERTY ¶ 891, at 81–95 (Rohan rev. ed.1980)), Chief Justice Rabinowitz assumed that delivery law applied and noted that this court had done so in *Bennis*, 574 P.2d 450. This assumption did not conflict with the rationale of the majority opinion in *Lown*.

and we have previously held that the "clear and convincing" standard is often applicable to factual questions surrounding land actions.[25] We now adopt the rule that a recorded deed gives rise to a presumption of valid delivery that may be rebutted by the party challenging delivery by clear and convincing evidence.

2. **Judge Sanders applied the proper standards of law, and his factual findings, viewed in the light most favorable to the prevailing party, are not clearly erroneous.**

Rausch contends that in finding that he had not shown by clear and convincing evidence that he had not intended to transfer the deeds to Devine, the trial court clearly erred in its factual findings and credibility determination. Rausch also contends that the trial court made errors of law by relying on irrelevant facts and by failing to conclude expressly that Rausch intended to make a present transfer. We disagree.

Rausch's strongest argument, both in case law and in supporting documentary evidence, is that the trial court should have inferred that Rausch did not intend to transfer title to the properties based on his actions as the owner of the properties, including providing the funds for the mortgage and taxes, taking care of the upkeep, dealing with renters on the Iowa property, and building a new house on the Iowa property. Rausch cites *Crowder v. Crowder*[26] and *Staats v. Staats*[27] for the proposition that subsequent ownership acts are strong evidence that there was no intent to transfer title, and *Giefer v. Swenton*[28] for the proposition that the presumption of delivery is not as strong when the deed is not recorded by the grantor. But all of these cases are rich in factual detail supporting the

lack of intent to transfer, whereas Rausch's case, as will be discussed below, is not. Indeed, in *Crowder* the transferee testified that the purpose of the deed was to insulate the property from a possible tort settlement, not to transfer title as a gift.[29] In *Staats*, the deed was recorded years after it was drafted, the surviving transferor testified that the deed had been drafted out of concern for the possible failure of a bank, the trial court found that the recording transferee's contradicting testimony was not credible, and the transferee had never taken possession of the property except as a tenant.[30] Likewise, in *Giefer*, the court found that there was a valid delivery even where the transferees had never taken possession of the property because the drafter of the deeds had testified that the transferor had deeded his property to his children during his life only in order to avoid the expense and trouble for his children of submitting the land and his will to probate at his death.[31] On the contrary, in this case, the only testimony that Rausch did not intend a transfer came from Rausch himself, the trial court found that Rausch's credibility was poor, and both parties had possession of the land consistent with their shared household and established pattern of dividing household duties. Although exercising the incidents of ownership does cast doubt on whether a party has in fact intended to transfer title in a deed, the credibility determinations and facts in this case do not provide clear and convincing evidence overcoming a presumption of delivery.

■ According to Rausch, the trial court's conclusion that the presumption of delivery was not rebutted was based on factual findings, especially credibility determinations, that were clearly erroneous.[32] He

25. *See Spenard Action Comm. v. Lot 3, Block 1, Evergreen Subdivision*, 902 P.2d 766, 775 (Alaska 1995) (statutory nuisance abatement case, citing *D.M. v. D.A.*, 885 P.2d 94 (Alaska 1994) (reformation of deed) and *Miscovich v. Tryck*, 875 P.2d 1293 (Alaska 1994) (abandonment of mining claim)). *But see Fernandes v. Portwine*, 56 P.3d 1, 5 (Alaska 2002) (clear and convincing standard does not apply to general tort nuisance).

26. 303 Ark. 562, 798 S.W.2d 425, 427 (1990).

27. 148 Kan. 808, 84 P.2d 842, 843 (1938).

28. 23 Kan.App.2d 172, 928 P.2d 906, 909 (1997).

29. *Crowder*, 798 S.W.2d at 426–28.

30. *Staats*, 84 P.2d at 842–44.

31. *Giefer*, 928 P.2d at 908–10.

32. In his reply brief, Rausch argues for the first time that no presumption of delivery should have arisen at all because the recording was not performed by the grantor. Issues raised for the first

argues that the trial court should have given more weight to his testimony that he wanted Devine to take the Iowa property only if he died before their daughter turned eighteen, and that he deeded the Anchorage property to Devine merely as a gesture of goodwill after their relationship soured. But we agree with the superior court that Rausch's stated intentions are belied by his decisions to draft unqualified quitclaim deeds. Rausch was a licensed attorney who had experience in marital property law. Drafting an unqualified Iowa deed with an expectation that the deed would become effective only upon Rausch's death would have been an ineffective transfer whether he kept the deed in his own possession or transferred it to Devine, and therefore would not have reached the result Rausch claims he intended.[33] Moreover, any conditions on the Alaska deed are oral and unproved, so that the Alaska transfer would also have been ineffective to reach the results Rausch claimed he intended.[34] Not only would these deeds have been legally ineffective to reach the results that Rausch claims he intended, but they were also facially unrelated to those results. Devine argues, with some justice, that Rausch's case amounts to the proposition that ten years after the fact only Rausch's "secret," unstated intentions regarding the property are relevant. Indeed, Rausch testified that he and

Devine never discussed his intentions regarding the Anchorage property because "she knew why I did it.... I wanted to ameliorate [her] concern."

We also agree with the superior court that Rausch did not present clear and convincing evidence to support his testimony that he did not intend to deliver the deeds; rather, his supporting evidence was contradictory and incomplete, especially when viewed in the light most favorable to Devine, the prevailing party. The trial court noted that while Rausch insisted repeatedly in his testimony that he would never give away his property, nevertheless he did not call any of the lawyer friends who authorized or recorded the deeds for him to corroborate his assertion that the deeds were not meant to transfer title. Moreover, Rausch did not bolster these assertions by explaining what steps he took, if any, to retain control over either of the deeds. Rather, regarding the Iowa deed, he says only that he "showed" the Iowa deed to Devine and that she later stole it from him, without explaining what he did with the deed after showing it to her, where he kept it, or how he excepted this particular piece of paper from his usual practice of depending on Devine to supervise all the paperwork relating to their household. Iowa case law provides that the grantor's intent regarding delivery is to be deduced from the grantor's

time in the reply brief are deemed waived. *Childs v. Tulin,* 799 P.2d 1338, 1340 n. 5 (Alaska 1990). However, we also note that Rausch's argument is incorrect: Neither the Iowa cases nor the treatises make an absolute distinction between recording by the grantor and the grantee. *See, e.g., Orud v. Groth,* 652 N.W.2d 447, 451 (Iowa 2002) ("A duly executed and recorded deed ordinarily raises a rebuttable presumption of delivery with the present intent of passing immediate title and the right of possession."); POWELL, *supra* note 2 at § 81A.04[2][a][iv] ("Upon a demonstration that the deed has been recorded by the grantor *or grantee, or by their agents,* a rebuttable presumption of delivery arises." (emphasis added)); AM.JUR 2d *Deeds, supra* note 22 at § 141 ("The recording of a regularly executed and acknowledged deed by *either the grantor or the grantee* raises a rebuttable presumption of delivery ...." (emphasis added) (footnotes omitted)).

**33.** If Rausch retained the Iowa deed intending for it to become effective only at his death, and never surrendered the deed to Devine, as Rausch

alleges, then it was ineffective as a transfer for lack of delivery under Iowa law. *Klosterboer v. Engelkes,* 255 Iowa 1076, 125 N.W.2d 115, 117 (Iowa 1963). If Rausch had indeed surrendered the Iowa deed to Devine but still intended for it to become effective only upon his death, then the deed again would have been ineffective for lack of delivery. *Avery v. Lillie,* 260 Iowa 10, 148 N.W.2d 474, 477 (Iowa 1967). Rausch could have achieved his allegedly desired result by, *inter alia,* drafting a will, by depositing the quitclaim deed to a third party without reserving the right to recall it, by reserving a life estate for himself in the deed, or by transferring the property to himself and Devine as joint tenants with right of survivorship.

**34.** Under *Bennis v. Alexander,* 574 P.2d 450, 452 (Alaska 1978), unproved oral conditions on a deed are ineffective, and the resulting property transfer is both effective and unencumbered. Rausch could have achieved his allegedly desired result of guaranteeing Devine housing until Sydney's majority by, *inter alia,* granting Devine a lease with a term of years.

"acts or words or both,"[35] probably as a safeguard against the "secret intent" problem. In this case Rausch's only relevant acts and words were those of ownership in paying the mortgage, etc., and as the trial court correctly noted, these acts are not inconsistent with the possibility that he intended that title to the land be transferred to Devine because she lacked the ability to buy her own land. Rausch's subsequent acts of ownership do not clearly and convincingly show that Rausch drafted, signed, and asked a friend to notarize the unconditional Iowa quitclaim deed intending something other than a present transfer of title to Devine, someone with whom he expected to be living for a long time.

There is a similar lack of supporting evidence as to Rausch's intentions regarding the Anchorage deed. Again, Rausch claims that he used his Iowa quitclaim deed as a model and took it to lawyers with whom he had practiced to have the deed acknowledged, but did not testify that he explicitly instructed them not to record the deed and to return it to his sole control. He testified instead that he could not remember whether he instructed his attorney to return the deed to himself or Devine, and apparently never looked for the return of the deed or thought about it again until 1994 when refinancing his mortgage. Yet Rausch claims to be surprised that the Anchorage deed was recorded, and his attorney suggested that his lawyer friends must have "mistakenly" recorded the deed on his behalf. These facts—that Rausch apparently placed no significance on his lack of control of the deed, that it was recorded by his own agent, and that he chose the form of the deed himself—all tend to raise the inference that Rausch in fact intended the deed to do exactly what it said it did: give title to the property to Devine.

Regarding credibility, in the absence of any testimony from Rausch explaining how he attempted to keep control of either deed, the trial court was left only with the nakedly conflicting testimony of the two parties, making the whole case turn to a substantial extent on the credibility determination.

Credibility determinations are the function of the trial court, not this court.[36] The trial court observed that while Rausch claims he never authorized the recording of either deed, Rausch waited until six years after he claims to have learned of the recording of the deeds to attempt to rectify Devine's alleged theft of the Iowa deed from him and his own attorney's purported mistake in recording the Alaska deed. The superior court also noted that Rausch's testimony about his financial habits was not credible, that Rausch had deliberately misled others about his assets in the past in order to avoid what he saw as unfair child support obligations, and that Devine had provided a plausible narrative regarding why Rausch had given her the properties. Devine testified that Rausch had promised her the Anchorage house at the time they agreed to marry and that she had repeatedly asked him to formalize their union. In this connection, it is important to note that there were inferences from Rausch's own testimony to support the trial court's finding that Devine was credible: although typically couching the issue in terms of fear for his death in a hunting or flying accident, Rausch also acknowledged that he knew that Devine's unmarried status and lack of resources made Devine feel financially and legally insecure, and that he drafted both deeds to meet her concerns. In addition, Rausch had a history of extravagant gifts, including land: he had given at least one piece of land to one of his children in the past, and he had given Devine a Rolex at the time of their putative marriage ceremony as well as a Mercedes earlier. The relevance of the credibility determinations is clear, and the credibility determination is a matter for the superior court.

Rausch also contends that the superior court made two errors of law. First, Rausch contends that the trial court's credibility determinations were based in part on facts which were "not related" to the issue of delivery of the deeds and therefore were not relevant. Because Rausch's primary evidence of his lack of intent to deliver the

**35.** *Orud,* 652 N.W.2d at 451.

**36.** Alaska R. Civ. P. 52(a); *Parker v. Northern Mixing Co.,* 756 P.2d 881, 892 (Alaska 1988).

deeds was his own testimony about his intentions, the trial court had no choice but to discuss less relevant material in explaining its assessment of Rausch's overall credibility, which it properly did. Yet the trial court substantiated its opinion regarding the delivery of the deeds entirely with facts relating directly to the delivery of the deeds. We hold that there was no error in the trial court's application of the law to the facts.

Second, Rausch contends that the trial court committed legal error by failing to conclude expressly that Rausch intended a present transfer. However, under the rebuttable presumption of delivery raised by the recording of each of the deeds, delivery was already presumed. It was not the court's duty to find that the deeds had been delivered; it was instead Rausch's duty to present clear and convincing evidence that they had not been delivered. There was no error of law on this point. Upon a review of the record viewed in the light most favorable to the prevailing party, it cannot be said that the trial court obviously made a mistake in finding that Rausch had not submitted evidence of a quantity or quality that would rebut the presumption of a valid delivery of either deed under the "clear and convincing" standard.

### B. Because the Transfer of the Properties Did Not Give Rise to an Inference that Rausch Did Not Intend Devine To Benefit, No Resulting Trust Was Required.

■ Rausch also contends that the trial court erred in refusing to impose a resulting trust on the properties. The existence and extent of equitable interests in land are governed by the law of the situs of the land.[37] Iowa follows the Restatement (Second) of Trusts and defines a resulting trust as being imposed " 'for the purpose of carrying out what it appears from the circumstances under which a disposition of property is made would probably have been the intention of the person making the disposition.' " [38] We have examined a resulting trust only once, in *Sugg v. Morris*,[39] but did not define it there. However, the Restatement (Second) of Trusts has helped guide our definition of trusts in the past.[40]

Rausch also relied upon the Restatement (Second) of Trusts in the trial court. The Restatement explains that a resulting trust arises where circumstances raise an inference that the payor does not intend that the grantee should have the beneficial interest in the property, the inference is not rebutted, and the beneficial interest is not disposed of.[41] The Introductory Note to the chapter on resulting trusts explains that such an inference may arise in three situations: (1) where an express private or charitable trust fails in whole or in part; (2) where a private or charitable trust is fully performed but some of the trust estate has not yet been exhausted; or (3) "[w]here property is purchased and the purchase price is paid by one person and at his direction the vendor transfers the property to another person." [42] Section 405 of the Second Restatement provides that "[w]here the owner of property transfers it without declaring any trust, the transferee does not hold the property upon a resulting trust although the transfer is gratuitous." Comment a to that section explains that "[w]here a transfer of property is made without consideration, the inference is that the transferor intends to make a gift to the transferee, not that he intends that the transferee should hold the property for the benefit of the transferor." Section 440 explains that where a transfer is made to one person and the purchase price is paid by another, an inference of a resulting trust arises; but section 441 explains that the in-

**37.** Restatement (Second) of Conflict of Laws § 235 (1971); Leflar, *supra* note 13 at § 172.

**38.** *Orud,* 652 N.W.2d at 452 (quoting Restatement (Second) of Trusts § 404, Introductory Note, at 324 (1959)).

**39.** 392 P.2d 313, 316 (Alaska 1964).

**40.** *Alaska State Employees Ass'n v. Alaska Public Employees Ass'n,* 825 P.2d 451, 459 (Alaska 1991) (defining trusts generally); *McKnight v. Rice, Hoppner, Brown & Brunner,* 678 P.2d 1330, 1335 (Alaska 1984) (defining constructive trust).

**41.** Restatement (Second) of Trusts § 404, Introductory Note, at 322–23.

**42.** *Id.* at 323.

ference does not apply if the payor manifests an intent that no such trust should arise. Comment a to section 441 explains that this is the case where the payor shows an intent to make a gift, and comment b lists factors that may tend to show whether or not a gift was intended.[43]

Rausch alleges various errors by the trial court. He first contends that the trial court misunderstands the creation of a resulting trust, because the trial court only cited portions of the Restatement in its opinion that state that a resulting trust may arise where the payor directs the vendor that title shall be taken by the transferee. Rausch argues that other situations exist in which an inference will arise that the payor did not intend to give the transferee the beneficial interest, for instance where conditions impose a fiduciary duty on the grantor or a third person. Rausch also argues that a resulting trust is appropriately imposed where this will bring into effect what the grantor would have chosen had he thought carefully about the matter. Rausch's statements of law are valid[44] and are mirrored in the relevant Iowa case law.[45] However, the trial court's emphasis on third-party transfers appears to reflect only the fact that the first two classic situations raising an inference of a resulting trust, where there is an attempt at an express trust or where the purposes of a trust have been fully performed, could not possibly have been applicable in this case. Moreover, the substantive basis for the trial court's ruling was its factual finding that the transfers were gratuitous, as shown by the court's citation to Restatement section 405. Comment a to section 405 states that gratuitous transfers of previously-held property are subject to the inference that a gift was intended, not the inference that the payor himself expected to benefit from the conveyance (which is de-

fined as a resulting trust by Restatement section 404). Therefore, the trial court was correct in ruling that the circumstances at hand gave rise to an inference of a gift, not a resulting trust. There was no error of law on this point.

Next, Rausch alleges that the trial court erred in stating that "no resulting trust would arise unless Mark could prove by clear and convincing evidence that he did not intend to gift the properties to Michelle." Rausch claims that it was error to presume a gift and error to require the gift to be rebutted through clear and convincing evidence. He claims instead that circumstances raise an inference that he did not intend for Devine to have the beneficial interest in the property. But the inference of a gift arises as a matter of law according to Restatement section 405 and as a matter of fact flowing from the trial court's credibility determination.

Finally, Rausch attacks the trial court's factual findings supporting the inference of a gift, which were patterned on Restatement section 441 comment b, on the ground that Rausch continued to make mortgage payments on the properties long after the original gift. The equity owned by Rausch in each property at the time the deeds were executed is already presumed to be a gift according to section 405, which refers to property already held by the benefactor. Therefore, the only remaining issue is whether the subsequent mortgage payments are subject to Restatement sections 440 and 441. Section 440 provides that a resulting trust arises where one party pays a purchase price but the land is transferred to another. Section 441 provides that "[a] resulting trust does not arise where a transfer of property is

---

43. These factors include: (1) declarations made by the payor at any time regarding the transfer; (2) the relationship between the payor and transferee; (3) whether the transferee is an individual, corporation, or charitable corporation; (4) the relative financial positions of the payor and transferee; (5) whether a gift by the payor to the transferee would be improvident; (6) the presence or absence of any reason for taking title in the name of the transferee other than to provide the beneficial interest. RESTATEMENT (SECOND) OF TRUSTS § 441 cmt. b.

44. RESTATEMENT (SECOND) OF TRUSTS § 404, Introductory Note, at 324.

45. *Orud v. Groth*, 652 N.W.2d 447, 452 (Iowa 2002) (inference of resulting trust raised through letter from grantor drafted concurrently with conveyance explaining that any proceeds from sale of property by transferee should be distributed among all of transferee's children).

made to one person and the purchase price is paid by another, if the person by whom the purchase price is paid manifests an intention that no resulting trust should arise." We do not consider each mortgage payment to constitute an individual transfer of property to Devine; rather, each mortgage payment simply expresses Rausch's completion of his contractual obligations under the mortgage. Therefore we doubt that there is any transfer of property here in the sense that would create a resulting trust under Restatement section 440 at all. We affirm on the ground that section 405 applied to both the initial transfer and the later mortgage payments.

### C. Because Devine Was Not Unjustly Enriched by the Transfer of the Properties, No Constructive Trust Was Required.

Rausch contends that the trial court erred in refusing to impose a constructive trust on the properties. The existence and extent of equitable interests in land are governed by the law of the situs of the land.[46] Iowa follows the definition of the Restatement (Second) of Trusts, which states that a constructive trust expresses a right to restitution based on unjust enrichment.[47] The Restatement of Restitution states that "one who makes a gift or voluntarily pays money which he knows he does not owe confers a benefit; in neither case is he entitled to restitution." [48] In the absence of a document evidencing the intention to create a trust, Iowa will impose a constructive trust only where (1) there is fraud, duress, or undue influence; (2) the transferee and transferor were in a confidential relationship; or (3) the transfer was made by the transferor in anticipation of death.[49] Likewise, in Alaska a constructive trust is appropriate to prevent unjust enrichment, defined as the retention of property through "unjust, unconscionable, or unlawful means." [50]

The trial court responded to the constructive trust cause of action by pointing out that during Rausch and Devine's ten-year relationship, Rausch had benefitted greatly from Devine's services, and concluding that her retention of both properties could not be characterized as unjust or unconscionable. Rausch attacks the trial court's characterization of the facts as unsupported by detailed evidence, and argues that there is no legal support for the contention that Rausch deserved to be compensated for her domestic services. Devine argues that the transfer was a gift and was fair. As to the Iowa deed, although Rausch did allege that Devine essentially stole the deed in order to record it, which could be a basis for a finding of fraudulent unjust enrichment, the trial court did not give credence to this allegation, and there is no other applicable basis in Iowa law on which to impose a constructive trust. Regarding the Anchorage deed, Rausch does not allege that Devine obtained the title to that property through any "unjust, unconscionable, or unlawful means." [51] Rather, the argument is only that it is unfair that Devine should hold title to something that Rausch paid for. Whatever the merits of that argument, that Devine holds title to property that Rausch paid for does not constitute unjust enrichment.[52] We interpret the trial court's reasoning on this issue as a rejection of the implication that receiving property for acting as a stay-at-home parent is unjust, unconscionable, or unlawful, and affirm its ruling denying a constructive trust.

## V. CONCLUSION

Because Rausch failed to rebut the presumption of delivery of the deeds by clear

---

**46.** RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 235 (1971); LEFLAR, *supra* note 13 at § 172.

**47.** *Orud,* 652 N.W.2d at 452 n. 2 (citing RESTATEMENT (SECOND) OF TRUSTS § 404, Introductory Note, at 326); RESTATEMENT OF RESTITUTION § 160 cmt. b (1937).

**48.** RESTATEMENT OF RESTITUTION § 1 cmt. c.

**49.** *Orud,* 652 N.W.2d at 452.

**50.** *State Farm Auto. Ins. Co. v. Raymer,* 977 P.2d 706, 712 (Alaska 1999) (quoting *McKnight v. Rice, Hoppner, Brown & Brunner,* 678 P.2d 1330, 1335 (Alaska 1984) (quoting G. BOGERT, *supra* note 2, at 3)).

**51.** *Raymer,* 977 P.2d at 712 (quoting *McKnight,* 678 P.2d at 1335 (quoting G. BOGERT, *supra* note 2, at 3)).

**52.** RESTATEMENT OF RESTITUTION § 1 cmt. c.

and convincing evidence, because gratuitous transfers do not raise an inference of intent to benefit someone other than the transferee such that a resulting trust is appropriate, and because a freely gratuitous transfer is not unjust enrichment justifying the imposition of a constructive trust, we AFFIRM the superior court in all respects.